73 U.S. 50 (____)
6 Wall. 50
STATE OF GEORGIA
v.
STANTON.
Supreme Court of United States.

*53 Mr. Stanbery, A.G., at the last term moved to dismiss the bill for want of jurisdiction.
*71 The bill having been dismissed at the last term, Mr. Justice NELSON now delivered the opinion of the court.
A motion has been made by the counsel for the defendants to dismiss the bill for want of jurisdiction, for which a precedent is found in the case of The State of Rhode Island v. The State of Massachusetts.[*] It is claimed that the court has no jurisdiction either over the subject-matter set forth in the bill or over the parties defendants. And, in support of the first ground, it is urged that the matters involved, and presented for adjudication, are political and not judicial, and, therefore, not the subject of judicial cognizance.
This distinction results from the organization of the government into the three great departments, executive, legislative, and judicial, and from the assignment and limitation of the powers of each by the Constitution.
The judicial power is vested in one supreme court, and in such inferior courts as Congress may ordain and establish: the political power of the government in the other two departments.
The distinction between judicial and political power is so generally acknowledged in the jurisprudence both of England and of this country, that we need do no more than refer to some of the authorities on the subject. They are all in one direction.[]
*72 It has been supposed that the case of The State of Rhode Island v. The State of Massachusetts[*] is an exception, and affords an authority for hearing and adjudicating upon political questions in the usual course of judicial proceedings on a bill in equity. But, it will be seen on a close examination of the case, that this is a mistake. It involved a question of boundary between the two States. Mr. Justice Baldwin, who delivered the opinion of the court, states the objection, and proceeds to answer it. He observes,[] "It is said that this is a political, not civil controversy, between the parties; and, so not within the Constitution, or thirteenth section of the Judiciary Act. As it is viewed by the court, on the bill alone, had it been demurred to, a controversy as to the locality of a point three miles south of the southernmost point of Charles River, is the only question that can arise under the charter. Taking the case on the bill and plea, the question is, whether the stake set up on Wrentham Plain by Woodward and Saffrey, in 1842, is the true point from which to run an east and west line as the compact boundary between the States. In the first aspect of the case it depends on a fact; in the second, on the law of equity, whether the agreement is void or valid; neither of which present a political controversy, but one of an ordinary judicial nature of frequent occurrence in suits between individuals." In another part of the opinion, speaking of the submission by sovereigns or states, of a controversy between them, he observes, "From the time of such submission the question ceases to be a political one, to be decided by the sic volo, sic jubeo, of political power. It comes to the court to be decided by its judgment, legal discretion, and solemn consideration of the rules of law, appropriate to its nature as a judicial question, depending on the exercise of judicial powers, as it is bound to act by known and settled principles of national or municipal jurisprudence, as the case requires." *73 And he might have added, what, indeed, is probably implied in the opinion, that the question thus submitted by the sovereign, or state, to a judicial determination, must be one appropriate for the exercise of judicial power; such as a question of boundary, or as in the case of Penn v. Lord Baltimore, a contract between the parties in respect to their boundary. Lord Hardwicke places his right in that case to entertain jurisdiction upon this ground.
The objections to the jurisdiction of the court in the case of Rhode Island against Massachusetts were, that the subject-matter of the bill involved sovereignty and jurisdiction, which were not matters of property, but of political rights over the territory in question. They are forcibly stated by the Chief Justice, who dissented from the opinion.[*] The very elaborate examination of the case by Mr. Justice Baldwin, was devoted to an answer and refutation of these objections. He endeavored to show, and, we think did show, that the question was one of boundary, which, of itself, was not a political question, but one of property, appropriate for judicial cognizance; and, that sovereignty and jurisdiction were but incidental, and dependent upon the main issue in the case. The right of property was undoubtedly involved; as in this country, where feudal tenures are abolished, in cases of escheat, the State takes the place of the feudal lord, by virtue of its sovereignty, as the original and ultimate proprietor of all the lands within its jurisdiction.
In the case of The State of Florida v. Georgia,[] the United States were allowed to intervene, being the proprietors of a large part of the land situated within the disputed boundary, ceded by Spain as a part of Florida. The State of Florida was also deeply interested as a proprietor.
The case, bearing most directly on the one before us, is The Cherokee Nation v. The State of Georgia.[] A bill was filed in that case and an injunction prayed for, to prevent the execution of certain acts of the legislature of Georgia within the territory of the Cherokee Nation of Indians, they claiming *74 a right to file it in this court, in the exercise of its original jurisdiction, as a foreign nation. The acts of the legislature, if permitted to be carried into execution, would have subverted the tribal government of the Indians; and subjected them to the jurisdiction of the State. The injunction was denied, on the ground that the Cherokee Nation could not be regarded as a foreign nation within the Judiciary Act; and, that, therefore, they had no standing in court. But, Chief Justice Marshall, who delivered the opinion of the majority, very strongly intimated, that the bill was untenable on another ground, namely, that it involved simply a political question. He observed, "That the part of the bill which respects the land occupied by the Indians, and prays the aid of the court to protect their possessions, may be more doubtful. The mere question of right might, perhaps, be decided by this court in a proper case with proper parties. But the court is asked to do more than decide on the title. The bill requires us to control the legislature of Georgia, and to restrain the exertion of its physical force. The propriety of such an interposition by the court may be well questioned. It savors too much of the exercise of political power, to be within the province of the judicial department." Several opinions were delivered in the case; a very elaborate one, by Mr. Justice Thompson, in which Judge Story concurred. They maintained that the Cherokee Nation was a foreign nation within the Judiciary Act, and, competent to bring the suit; but, agreed with the Chief Justice, that all the matters set up in the bill involved political questions, with the exception of the right and title of the Indians to the possession of the land which they occupied. Mr. Justice Thompson, referring to this branch of the case, observed: "For the purpose of guarding against any erroneous conclusions, it is proper I should state, that I do not claim for this court, the exercise of jurisdiction upon any matter properly falling under the denomination of political power. Relief to the full extent prayed for by the bill may be beyond the reach of this court. Much of the matters therein contained by way of complaint, would seem to depend for relief upon *75 the exercise of political power; and, as such, appropriately devolving upon the executive, and not the judicial department of the government. This court can grant relief so far, only, as the rights of persons or property are drawn in question, and have been infringed." And, in another part of the opinion, he returns, again, to this question, and, is still more emphatic in disclaiming jurisdiction. He observes: "I certainly do not claim, as belonging to the judiciary, the exercise of political power. That belongs to another branch of the government. The protection and enforcement of many rights secured by treaties, most certainly do not belong to the judiciary. It is only where the rights of persons or property are involved, and when such rights can be presented under some judicial form of proceedings, that courts of justice can interpose relief. This court can have no right to pronounce an abstract opinion upon the constitutionality of a State law. Such law must be brought into actual, or threatened operation upon rights properly falling under judicial cognizance, or a remedy is not to be had here." We have said Mr. Justice Story concurred in this opinion; and Mr. Justice Johnson, who also delivered one, recognized the same distinctions.[*]
By the second section of the third article of the Constitution "the judicial power extends to all cases, in law and equity, arising under the Constitution, the laws of the United States," &c., and as applicable to the case in hand, "to controversies between a State and citizens of another State,"  which controversies, under the Judiciary Act, may be brought, in the first instance, before this court in the exercise of its original jurisdiction, and we agree, that the bill filed, presents a case, which, if it be the subject of judicial cognizance, would, in form, come under a familiar head of equity jurisdiction, that is, jurisdiction to grant an injunction to restrain a party from a wrong or injury to the rights of another, where the danger, actual or threatened, is irreparable, or the remedy at law inadequate. But, according to the course of *76 proceeding under this head in equity, in order to entitle the party to the remedy, a case must be presented appropriate for the exercise of judicial power; the rights in danger, as we have seen, must be rights of persons or property, not merely political rights, which do not belong to the jurisdiction of a court, either in law or equity.
The remaining question on this branch of our inquiry is, whether, in view of the principles above stated, and which we have endeavored to explain, a case is made out in the bill of which this court can take judicial cognizance. In looking into it, it will be seen that we are called upon to restrain the defendants, who represent the executive authority of the government, from carrying into execution certain acts of Congress, inasmuch as such execution would annul, and totally abolish the existing State government of Georgia, and establish another and different one in its place; in other words, would overthrow and destroy the corporate existence of the State, by depriving it of all the means and instrumentalities whereby its existence might, and, otherwise would, be maintained.
This is the substance of the complaint, and of the relief prayed for. The bill, it is true, sets out in detail the different and substantial changes in the structure and organization of the existing government, as contemplated in these acts of Congress; which, it is charged, if carried into effect by the defendants, will work this destruction. But, they are grievances, because they necessarily and inevitably tend to the overthrow of the State as an organized political body. They are stated, in detail, as laying a foundation for the interposition of the court to prevent the specific execution of them; and the resulting threatened mischief. So in respect to the prayers of the bill. The first is, that the defendants may be enjoined against doing or permitting any act or thing, within or concerning the State, which is or may be directed, or required of them, by or under the two acts of Congress complained of; and the remaining four prayers are of the same character, except more specific as to the particular acts threatened to be committed.
*77 That these matters, both as stated in the body of the bill, and, in the prayers for relief, call for the judgment of the court upon political questions, and, upon rights, not of persons or property, but of a political character, will hardly be denied. For the rights for the protection of which our authority is invoked, are the rights of sovereignty, of political jurisdiction, of government, of corporate existence as a State, with all its constitutional powers and privileges. No case of private rights or private property infringed, or in danger of actual or threatened infringement, is presented by the bill, in a judicial form, for the judgment of the court.
It is true, the bill, in setting forth the political rights of the State, and of its people to be protected, among other matters, avers, that Georgia owns certain real estate and buildings therein, State capitol, and executive mansion, and other real and personal property; and that putting the acts of Congress into execution, and destroying the State, would deprive it of the possession and enjoyment of its property. But, it is apparent, that this reference to property and statement concerning it, are only by way of showing one of the grievances resulting from the threatened destruction of the State, and in aggravation of it, not as a specific ground of relief. This matter of property is neither stated as an independent ground, nor is it noticed at all in the prayers for relief. Indeed the case, as made in the bill, would have stopped far short of the relief sought by the State, and its main purpose and design given up, by restraining its remedial effect, simply to the protection of the title and possession of its property. Such relief would have called for a very different bill from the one before us.
Having arrived at the conclusion that this court, for the reasons above stated, possesses no jurisdiction over the subject-matter presented in the bill for relief, it is unimportant to examine the question as it respects jurisdiction over the parties defendants.
The CHIEF JUSTICE: Without being able to yield my assent to the grounds stated in the opinion just read for the *78 dismissal of the complainant's bill, I concur fully in the conclusion that the case made by the bill, is one of which this court has no jurisdiction.
BILL DISMISSED FOR WANT OF JURISDICTION.
NOTES
[*] 12 Peters, 669.
[] Nabob of Carnatic v. The East India Co., 1 Vesey, Jr., 375-393, S.C., 2 Id. 56-60; Penn v. Lord Baltimore, 1 Vesey, 446-7; New York v. Connecticut, 4 Dallas, 4-6; The Cherokee Nation v. Georgia, 5 Peters, 1, 20, 29, 30, 51, 75; The State of Rhode Island v. The State of Massachusetts, 12 Ib. 657, 733, 734, 737, 738.
[*] 12 Peters, 657.
[] Page 736.
[*] 12 Peters, 752, 754.
[] 17 Howard, 478.
[] 5 Peters, 1.
[*] 5 Peters, 29-30.