### ANTHONY v. BURROW et al.

(Circuit Court, D. Kansas, First Division. April 12, 1904.)

No. 8,193.

1. JURISDICTION OF FEDERAL COURTS—FEDERAL QUESTION—LEGALITY OF CONGRESSIONAL DISTRICT.

While the power to fix the number of representatives in Congress and to apportion them among the several states is vested in Congress, the power to divide a state into congressional districts for the election of representatives resides in the Legislature of the state, and the question

¶ 1. Federal jurisdiction in actions involving federal question, see notes to Bailey v. Mosher, 11 C. C. A. 308; Montana Ore Purchasing Co. v. Mining Co., 35 C. C. A. 7.

whether a county is lawfully included in a congressional district where it was placed by an act of the Legislature does not depend on the construction of any law of the United States, so as to give a federal court jurisdiction of a suit for its determination, but upon the validity of the act of the Legislature, which is a question for determination by the state courts.

2. SAME.

State legislation relating to the selection of candidates for representatives in Congress does not, because of its subject-matter, become a part of the federal law, the construction of which raises a federal question.

3. EQUITY JURISDICTION—REMEDY AT LAW—MANDATORY INJUNCTION AGAINST STATE OFFICER.

A federal court of equity is without jurisdiction to grant an order requiring a state officer to certify the nomination of a certain person as a candidate for representative in Congress, the subject not being of equitable cognizance.

4. FEDERAL COURTS—ENFORCING STATUTORY REMEDY.

The rule that a federal court may enforce a remedy, either equitable or legal, given by a state statute, presupposes that the cause is one of which the federal court has jurisdiction.

5. EQUITY JURISDICTION—POLITICAL RIGHTS—ENJOINING ISSUANCE OF CERTIFICATE OF NOMINATION.

A court of equity has no jurisdiction to enjoin officers of a state, acting under a state statute, from issuing a certificate of nomination to a candidate for representative in Congress, the right involved being purely political, as distinguished from a civil or property right, to which alone the jurisdiction of equity extends.

In Equity. On application for restraining order.

A. E. Crane and Hite & Nichols, for complainant.

C. C. Coleman, Atty. Gen., Eugene Hagan, and J. G. Slonecker, for defendants.

POLLOCK, District Judge. This court is asked to grant a temporary restraining order against defendants upon the face of the bill of complaint filed herein. The controversy arises from political complications now existing in the First Congressional District of this state between two factions of the Republican Party. The real question of merit thought to be involved and sought to have determined here is whether complainant or one Charles Curtis is the regular nominee of the Republican Party in the First Congressional District of this state for the office of representative in the Congress of the United States from said district.

The averments of the bill, in substance, are: That complainant possesses all of the qualifications requisite under the law for such office; that defendants are the Secretary, Auditor, and Attorney General of the state of Kansas; that at a nominating convention, duly called, held at the city of Holton on the 2d day of February last, for the purpose of selecting a candidate of the Republican Party for said office from said district, to be voted for by the electors in said district at the coming November election, a split of said convention into two factions occurred, the one faction nominating complainant, and the other nominating said Charles Curtis; that, by reason of a conspiracy existing among certain of the adherents of the Curtis faction, numerous frauds were perpetrated in many of the counties comprising the district for the purpose of preventing complainant from securing such nomination, and

that such conspiracy resulted in the sending to said convention contesting and fraudulent delegations from certain counties in said district, unlawfully pretending to represent said counties in said convention; that said congressional district, under the act of Congress of February 7, 1891, commonly known as the "Reapportionment Act," at the date of said convention was composed of the counties of Atchison, Brown, Doniphan, Nemaha, Jackson, Jefferson, Leavenworth, and Pottawatomie; that, notwithstanding the fact that under the provisions of said act of Congress said district was so composed of the counties named, the county of Shawnee, not included in or comprising a part of said district, selected a large number of delegates, who appeared in said convention as adherents of the Curtis faction, and, in furtherance of said conspiracy to defeat the nomination of complainant, were wrongfully seated in the convention which nominated said Charles. Curtis; that the convention which pretended to select said Curtis as the party nominee of said party in said district was wholly irregular, void, and without authority of law, and did not include a majority of the delegates to said convention entitled under the law to participate therein, but, on the contrary, that complainant secured the vote of a majority of the delegates to such convention entitled by law to participate in the proceedings of said convention; that he is the lawful nominee of the party for said congressional district, and was so regularly declared at said convention, is entitled to a certificate of nomination under the laws of the state of Kansas, and that a majority of the qualified electors of said congressional district favor his election to said office, and, unless precluded therefrom by the unlawful combination and conspiracy of the defendants and others named in the bill, will be elected to such office at the coming November election. It is further averred in the bill that under the provisions of section 2703, Gen. St. Kan. 1901, which provides as follows:

"The certificate of nomination and nomination papers being so filed, and being in apparent conformity with this act, shall be deemed to be valid, unless objection thereto is duly made in writing within three days from the date said papers are filed with the proper officers. Such objections or other questions arising in relation thereto, in case of nominations of state officers or officers to be elected by the voters of a division less than a state and greater than a county, shall be considered by the Secretary of State, Auditor of State, and Attorney General, and a decision of a majority of these officers shall be final. Such objections or questions arising in the case of nominations for officers to be elected by the voters of a county or township shall be considered by the county clerk, clerk of the district court, and county attorney; and the decision of a majority of said officers shall be final. Objections or questions arising in the case of nominations for city or incorporated town officers shall be considered by the mayor and clerk, with whom one councilman, chosen by a majority of the councilmen, shall act; and the decision of a majority of such officers shall be final. In any case where objection is made, notice shall forthwith be given, by the officer with whom the objections are filed, to the candidates affected thereby, addressed to their places of residence as given in the nomination papers, and stating the time when, in no case to be more than five days, if a state or district officer, nor more than three days, if a county officer, and the place where such objections will be considered. All mandamus proceedings to compel an officer to certify and place upon the ballot any name or names, and all injunction proceedings asking that said officers be restrained from certifying and placing upon the ballot any name or names, must be commenced not less than twenty days before the election"—

129 F.—50

The defendants constitute the members of the board provided for in such act to pass upon objections to the nomination of any candidate for a public office whose district comprises more than one county in the state; that defendants are the nominees of the Republican Party of the state for re-election to the official positions now respectively held by each; that in order to secure their renomination to the several offices now held by them, at the state convention of the Republican Party held in the city of Wichita on the 9th day of March last, defendants conspired and confederated with the adherents of the Curtis faction in the First Congressional District to defeat the nomination of complainant and to secure their own renomination; that under the provisions of the statute above quoted said Curtis has filed a certificate of nomination with such board, and complainant has been compelled to file objections thereto, and that said objections are now pending and undisposed of before said board. The complainant further avers that, as a part of the fraudulent conspiracy to wrong complainant, the defendants, as members of the tribunal or board provided in said act of the Legislature to hear and determine objections filed to the nomination of said Curtis, have collusively and fraudulently, without hearing the evidence, prejudged said objections against complainant and in favor of the legality of the nomination of said Charles Curtis. It is further alleged in the complaint that the power attempted to be conferred upon defendants constituting said board, by the terms of the said act of the Legislature, to hear and determine the objections to the nomination papers of said Curtis made by complainant, is a judicial power, and that the attempt to confer such judicial power upon the Secretary, Auditor, and Attorney General of the state of Kansas was an unlawful exercise of legislative power, and that said act is, under the Constitution of the state of Kansas, void and of no effect. It is further alleged that defendants, acting as said board, unless restrained by order of this court, will determine the nomination papers of said Charles Curtis regular and valid, and the objections of complainant filed thereto insufficient under said void statutory provision, and that the defendant J. R. Burrow, as Secretary of the state of Kansas, will certify to the county clerks of the counties claimed by said Curtis to constitute the First Congressional District the name of said Charles Curtis as the regular party nominee for said office to be voted for by the electors of said district at the coming November election. The relief prayed is that an order of injunction may issue restraining defendants from acting as a tribunal or board under said void act of the Legislature to hear and determine the objections filed to the nomination of said Charles Curtis, and from determining who is the lawful nominee of the Republican Party for said office, and for an order directing the defendant J. R. Burrow, as Secretary of State, to forthwith certify to the several county clerks of the counties comprising the First Congressional District of the state of Kansas the name of complainant as the candidate of the Republican Party for member of the House of Representatives, to be placed upon the official ballot to be voted for at the coming November election, and general relief.

The first question naturally arising for determination is, does a federal court of equity have jurisdiction to hear and determine a contro-

versy of such nature as that charged in the bill of complainant? The general jurisdiction of this court is invoked, first, on the ground that the controversy involves the jurisdictional amount, and arises under a law of the United States. That law is the act of Congress of February 7, 1891, commonly known as the "Reapportionment Act," which increased the number of representatives in Congress from this state to eight, and section 4 of which act provides:

"That in case of an increase in the number of representatives which may be given to any state under this apportionment such additional representative or representatives shall be elected by the state at large, and the other representatives by the districts now prescribed by law until the Legislature of such state in the manner herein prescribed shall redistrict such state, and if there be no increase in the number of representatives from a state the representatives thereof shall be elected from the districts now prescribed by the Legislature of such state." 26 Stat. 736, c. 116.

By the provisions of section 2, c. 1, p. 1, Laws 1883, the Legislature of the state had provided that the counties of Atchison, Brown, Doniphan, Nemaha, Jackson, Jefferson, Leavenworth, and Pottawatomie should constitute the First Congressional District of the state, and such counties did constitute the First Congressional District at the date of the reapportionment act of Congress above mentioned. While it is not so averred in the complaint, yet it is a well-known fact, of which this court takes judicial knowledge, that the Legislature of the state, at its 1897 session, enacted as follows:

"That section 2 of chapter 1 of the Session Laws of 1883, be and the same is hereby amended so as to read as follows: Sec. 2. The counties of Nemaha, Brown, Doniphan, Jackson, Atchison, Jefferson, Leavenworth, and Shawnee, shall constitute the First District." Section 1, c. 90, p. 181, Laws 1897.

Hence the contention of complainant is that, Congress having declared the counties comprising the First Congressional District at the time of the reapportionment act should constitute the First Congressional District until the state should by act of the Legislature be redistricted into congressional districts, and as the taking of Pottawatomie county out of the First District and the placing of Shawnee county therein was not a redistricting of the state, Shawnee county constituted no lawful part of the First Congressional District at the date of the Holton convention, and the delegates therefrom were not entitled to a voice in such convention.

Does such contention raise a federal question cognizable in this court sitting in equity? By the repeated adjudications of the Supreme Court it is conclusively settled that a case arises under the Constitution or laws of the United States whenever, upon the whole record, there is a controversy involving the construction of either. Cohens v. Virginia, 6 Wheat. 264, 5 L. Ed. 257; Nashville v. Cooper, 6 Wall. 247, 18 L. Ed. 851; Tennessee v. Davis, 100 U. S. 257, 25 L. Ed. 648. In so far, therefore, as the general jurisdiction of this court depends, the question is, does the decision of this controversy depend upon a construction of the reapportionment act of Congress mentioned? The power to determine the number of representatives in Congress and to apportion that number among the several states resides in and can be exercised only by the Congress of the United States. In the exercise of that power the reapportionment act from which the above quotation is made was

enacted, fixing the number of representatives in Congress from the state of Kansas at eight, and providing for their election. But the power to divide the territory of a state into congressional districts, for the purpose of selecting members of Congress apportioned to a state, is a power residing in the Legislature of the state, and not in the Congress of the United States, as is recognized by said act of Congress. In the exercise of that power the act of the Legislature of 1897 was passed, taking the county of Pottawatomie from, and adding the county of Shawnee to, the First Congressional District. Hence it is apparent that the right of Shawnee county to participate in the proceedings of the Holton convention, under the averments of complainant's bill, does not depend upon the true construction of the "reapportionment act" of Congress, but does depend upon the validity of the act of the Legislature of the state placing the county of Shawnee in the First Congressional District; and the validity or invalidity of that act of the Legislature is a question for the determination of the courts of the state, and does not involve a federal question for determination by this court, unless the further contention made by solicitors for complainant may be sustained.

Such further contention is that under section 2, art. 1, of the federal Constitution, the electoral machinery of the state, when employed for the purpose of selecting representatives in Congress from a state, become laws of the United States, and are to be construed the same as though enacted by Congress for that purpose. In other words, if the determination of this controversy depends upon the construction of acts of the Legislature of the state of Kansas employed for the purpose of selecting a candidate for the office of representative in Congress from the First Congressional District of the state, such controversy becomes one cognizable by the federal courts, to the same extent as though the construction of the federal Constitution or laws was directly involved. In support of this contention, Ex parte Yarbrough, 110 U. S. 651, 4 Sup. Ct. 152, 28 L. Ed. 274, Wiley v. Sinkler, 179 U. S. 58, 21 Sup. Ct. 17, 45 L. Ed. 84, and Swafford v. Templeton, 185 U. S. 487, 22 Sup. Ct. 783, 46 L. Ed. 1005, are cited. However, an examination of those cases will show the sole question therein determined was, in the Yarbrough Case, the sufficiency of the federal criminal laws to punish one who unlawfully obstructs a person qualified under state laws from voting for a member of Congress; and, in the other cases, that federal courts have jurisdiction of an action at law brought by one qualified under state laws to vote for a member of Congress, who is wrongfully prevented from voting; and this because section 2 of article 1 of the federal Constitution adopts the qualifications required under state laws to vote for a member of the more numerous branch of the state Legislature as the test of the proper qualifications to vote for a member of Congress. From this it will be seen the claim made by solicitors for complainant, that the above and kindred cases hold the election machinery employed by the state in the selection of candidates for the office of representative in Congress, becomes, when so employed, a part of the federal law, and the construction of the same raises a federal question, is claiming too much for such cases.

As the question at bar is not the right to vote, but the privilege of

being voted for, and as this is not an action at common law for damages, but relief is sought by a bill in equity, the question whether this court in equity has jurisdiction to grant the injunction prayed remains. It must be apparent to any one that the relief sought by complainant under his bill, in so far as it prays an order of this court directing the defendant Burrow, as Secretary of State of the state of Kansas, to forthwith certify to the several county clerks of the counties comprising the First Congressional District the name of complainant as the party candidate to be placed on the official ballot to be voted at the coming November election, is not a proper subject of equity, for such relief can only be afforded in an action of mandamus, which is an action at law, and that a federal court of equity will not grant a mandatory injunction upon a preliminary or interlocutory motion against officers of a state, but, if at all, only upon final hearing, and then only to execute the decree or judgment of the court. Walkley v. City of Muscatine, 6 Wall. 483, 18 L. Ed. 930; Fletcher v. Tuttle (Ill.) 37 N. E. 683, 25 L. R. A. 143, 42 Am. St. Rep. 220; McCauley v. Kellogg et al., 2 Woods, 13, Fed. Cas. No. 8,688; Audenried v. Philadelphia & Reading R. Co., 68 Pa. 370, 8 Am. Rep. 195; Rogers Locomotive Works v. Erie Railway Co., 20 N. J. Eq. 379.

As to the temporary restraining order now asked, the argument made by solicitors for complainant is that the concluding portion of section 2703, Gen. St. Kan. 1901, above quoted, recognizes the right to proceed in equity in the state courts to restrain the action of the board of which the defendants are members. Hence such remedy, under repeated decisions of the federal courts, may be available in this court sitting as a court of equity. Ex parte McNeil, 13 Wall. 236, 20 L. Ed. 624, Davis v. Gray, 16 Wall. 203, 21 L. Ed. 447, Cowley v. Northern Pacific Railroad Co., 159 U. S. 569, 16 Sup. Ct. 127, 40 L. Ed. 263, and many other cases, are cited in support of the contention made. While it is true the rights created and remedies provided by the statute laws of a state may be enforced in the federal courts, either in law or in equity, yet the enforcement of such statutory rights and remedies by the federal courts first presupposes jurisdiction in the federal courts; and while the statute under consideration recognizes the right to obtain relief by injunction in the state courts under certain conditions, yet it creates no such right, and in my judgment no such right exists in this court sitting as a court of equity, and this for the following reasons: The right to become the nominee of a political party for a public office, whether national or state, and as such nominee to receive the votes of the qualified electors voting to fill such office, is a purely political right as contradistinguished from a civil or property right. In Re Sawyer, 124 U. S. 200, 8 Sup. Ct. 482, 31 L. Ed. 402, Mr. Justice Gray says:

"The office and jurisdiction of a court of equity, unless enlarged by express statute, are limited to the protection of rights of property."

"Political rights consist in the power to participate, directly or indirectly, in the establishment or management of the government. These political rights are fixed by the Constitution. Every citizen has the right to vote for public officers, and of being elected. These are the political rights which the humblest citizen possesses. Civil rights are those which have no relation to the establishment, support, or management of the government. They consist in

the power of acquiring and enjoying property, or exercising the paternal and marital powers, and the like. It will be observed that every one, unless deprived of them by sentence of civil death, is in the enjoyment of the civil rights, which is not the case with political rights, for an alien, for example, has no political, although in full enjoyment of the civil, rights." 2 Bouv. Law Dict. 597.

Mr. Justice Fuller, sitting as Circuit Justice in Green v. Mills, 69 Fed. 857, 16 C. C. A. 522, 30 L. R. A. 90, says:

"The jurisprudence of the United States has always recognized the distinction between common law and equity as, under the Constitution, matter of substance as well as of form and procedure. And the distinction has been steadily maintained, although both jurisdictions are vested in the same courts. Fenn v. Holme, 21 How. 481 [16 L. Ed. 198]; Thompson v. Railroad Co., 6 Wall. 134 [18 L. Ed. 765]; Cates v. Allen, 149 U. S. 451 [13 Sup. Ct. 883, 37 L. Ed. 804]; Mississippi Mills v. Cohn, 150 U. S. 202 [14 Sup. Ct. 75, 37 L. Ed. 1052]. It is well settled that a court of chancery is conversant only with matters of property and the maintenance of civil rights. The court has no jurisdiction in matters of a political nature, nor to interfere with the duties of any department of government, unless under special circumstances, and when necessary to the protection of rights of property, nor in matters merely criminal or merely immoral, which do not affect any right of property. In re Sawyer, 124 U. S. 200 [8 Sup. Ct. 482, 31 L. Ed. 402]; Luther v. Borden, 7 How. 1 [12 L. Ed. 581]; Mississippi v. Johnson, 4 Wall. 475 [18 L. Ed. 437]; Georgia v. Stanton, 6 Wall. 50 [18 L. Ed. 721]; Holmes v. Oldham, 1 Hughes, 76 [Fed. Cas. No. 6,643]."

The precise question here under consideration was ruled by the Supreme Court of Illinois in Fletcher v. Tuttle, 151 Ill. 41, 37 N. E. 683, 25 L. R. A. 143, 42 Am. St. Rep. 220. It is there said:

"The question, then, is whether the assertion and protection of political rights, as judicial power is apportioned in this state between courts of law and courts of chancery, are a proper matter of chancery jurisdiction. We would not be understood as holding that political rights are not a matter of judicial solicitude and protection, and that the appropriate judicial tribunal will not, in proper cases, give them prompt and efficient protection, but we think they do not come within the proper cognizance of courts of equity. In Sheridan v. Colvin, 78 Ill. 237, this court, adopting, in substance, the language of Kerr on Injunctions, said: 'It is elementary law that the subject of the jurisdiction of the court of chancery is civil property. The court is conversant only with the questions of property and the maintenance of civil rights. Injury to property, whether actual or prospective, is the foundation on which the jurisdiction rests. The court has no jurisdiction in matters merely criminal or merely immoral, which do not affect any right of property. Nor do matters of a political character come within the jurisdiction of the court of chancery. Nor has the court of chancery jurisdiction to interfere with the public duties of any department of the government, except under special circumstances, and where necessary for the rights of property.' Georgia v. Stanton, 6 Wall. 50 [18 L. Ed. 721]; In re Sawyer, 124 U. S. 200 [8 Sup. Ct. 482, 31 L. Ed. 402]; Sheridan v. Colvin, 78 Ill. 237; Dickey v. Reed, 78 Ill. 261; Harris v. Schryock, 82 Ill. 119, and other cases—are cited in support of the doctrine announced."

Again, in that case, it is said:

"Other authorities of similar import might be referred to, but the foregoing are amply sufficient to show that wherever the established distinctions between equitable and common-law jurisdiction are observed, as they are in this state, courts of equity have no authority or jurisdiction to interpose for the protection of rights which are merely political, and where no civil or property right is involved. In all such cases the remedy, if there is one, may be sought in a court of law. The extraordinary jurisdiction of courts of chancery cannot, therefore, be invoked to protect the right of a citizen to vote or

to be voted for at an election, or his right to be a candidate for or to be elected to any office; nor can it be invoked for the purpose of restraining the holding of an election, or of directing or controlling the mode in which, or of determining the rules of law in pursuance of which, an election shall be held. These matters involve in themselves no property rights, but pertain solely to the political administration of government. If a public officer, charged with political administration, has disobeyed or threatens to disobey the mandate of the law, whether in respect to calling or conducting an election or otherwise, the party injured or threatened with injury in his political rights is not without remedy, but his remedy must be sought in a court of law, and not in a court of chancery."

In Hardesty v. Taft, 23 Md. 513, 87 Am. Dec. 584, it is said:

"On this branch of the inquiry it seems to the court very clear that a court of equity cannot be invoked to prevent the performance of political duties like those committed to the officers of registration under the law. The willful, fraudulent, or corrupt refusal of a vote by judges of election, or a like denial of registration by the officer appointed to register votes, which is the same thing, can be adequately compensated for in damages at law. The writ of injunction will not be awarded in doubtful or new cases not coming within the well-established principles of equity. Bonaparte v. Railroad Co., Fed. Cas. No. 1,617."

In People v. Canal Board, 55 N. Y. 393, it is said:

"A court of equity exercises its peculiar jurisdiction over public officers to control their actions only to prevent a breach of trust affecting public franchises, or some illegal act under color or claim of right affecting injuriously the property rights of individuals. A court of equity has, as such, no supervisory power or jurisdiction over public officials or public bodies, and only takes cognizance of actions against or concerning them when a case is made coming within one of the acknowledged heads of equity jurisdiction."

In Giles v. Harris, 189 U. S. 475, 23 Sup. Ct. 639, 47 L. Ed. 909, it is held:

"A circuit court of the United States in Alabama has not jurisdiction of an action in equity brought by a colored man, resident in Alabama, on behalf of himself and other negroes, to compel the board of registrars to enroll the names upon the voting lists of the county in which they reside under a Constitution alleged to be contrary to the Constitution of the United States."

From an examination of the authorities I am persuaded this court has no jurisdiction to restrain the board of which the defendants are the constituent members, created under the statute above quoted, from acting, upon the ground that such statute is unconstitutional and void, or upon any ground set forth in the bill. The right sought to be enforced under the allegations of the bill filed in this case being a political right, and not a civil or property right, this court has no jurisdiction to entertain the bill, and a temporary restraining order against the defendants as officers of the state constituting such board, under the law above quoted, may not and should not be granted. There is no equity in the bill, and the same will be dismissed.