STATE *ex rel.* BOONE *et al. v.* METTS *et al.*

[88 South., 125, No. 21885.]

1. MUNICIPAL CORPORATIONS. *New census may be ordered by Governor to reclassify municipalities only when returns show change in classification.*

Under sections 3308 and 3311, Code of 1906 (sections 5804 and 5808, Hemingway's Code), the census return must show a change in the classification of a municipality before the Governor is em-

powered to act in the matter. It is only when this change is thus shown that the Governor can investigate the matter, have a new census taken, and reclassify the municipality.

2. MUNICIPAL CORPORATIONS. *Governor not authorized to reclassify city under census returns as made.*

Where a municipality was classed as a city before the federal census of 1920 was taken, and the final return of this census showed it to be still a city, the Governor is without power to appoint a person to take a new census of the municipality or to reclassify it under these sections of the Code.

APPEAL from circuit court of Lafayette county.

HON. W. A. ROANE, Judge.

*Quo warranto* by the state, on the relation of O. B. Boone and others, against T. J. Metts and others. Judgment for defendants on demurrer, and relators appeal. Affirmed.

*Clayton D. Potter,* for appellant.

*L. C. Andrews* and *Harry M. Byan,* for appellees.

No brief found in the record for either side.

SYKES, J., delivered the opinion of the court.

The appellants instituted a *quo warranto* proceeding in the circuit court of Lafayette county, seeking to oust the city officials of the municipality of Oxford and obtain possession of these offices.

The facts shown by the information and the exhibits thereto are as follows: That the municipality of Oxford prior to the taking of the federal census in the year 1920 had a population of more than two thousand people and had adopted the commission form of government provided for by chapter 120 of the Laws of 1912 (sections 6038 to 6067, inclusive, Hemingway's Code) ; that the Governor, believing that the final federal census return was fraudulent, appointed P. B. Furr to take a census of this munic-

ipality; that the final federal census return showed this municipality to have a population of over two thousand inhabitants, and the census taken by Mr. Furr, under the appointment of the Governor, showed the municipality to have a population of less than two thousand inhabitants. Upon this census return of Mr. Furr the Governor changed the classification of the Municipality of Oxford from a city to a town and appointed these appellants as its officers. A copy of the proclamation of the Governor is attached to the information. It appears in this proclamation that the final census returns of the federal government showed the municipality of Oxford to have over two thousand inhabitants, and that the Governor believed these returns were fraudulent because they purported to show, and did show, a larger number of people in this municipality than the Governor believed it contained, for which reason the Governor appointed Mr. Furr to take a new census, and that this census showed the total number of inhabitants of Oxford to be eighteen hundred and seven.

It will be noted that before the taking of this federal census this municipality was a city, and that the final federal census returns showed it still to be a city; in other words, this census return did not show a change in the class to which this municipality belonged.

A demurrer was sustained to this information in the circuit court, and, the appellants declining to amend, judgment final was rendered in that court, from which judgment the case is appealed here.

The contentions of the appellants are thus summarized in the brief of their able counsel:

"The only questions presented in this case are whether or not the Governor was acting within the authority conferred on him: First, in demoting the municipality of Oxford from a city to a town; and second, if he had the authority to so demote the municipality under the facts presented in this suit, did he have the power to appoint the

mayor and board of aldermen of the municipality of Oxford?"

It is only necessary for us to deal with the first question above presented, viz: Whether or not under the facts in this case the Governor, under the law, was authorized or possessed the power and authority to demote the municipality of Oxford from a city to a town.

Section 88 of the Constitution provides that the legislature shall pass general laws under which cities and towns may be chartered and their charters amended.

Section 3312 of the Code of 1906 (section 5809, Hemingway's Code)', prescribes for the incorporation of cities, towns, and villages. It is therein provided that petitions shall be prepared addressed to the Governor setting out, among other things, the metes and bounds, the number of inhabitants, etc., which petitions must be signed by two-thirds of the qualified electors of the proposed municipality and be published in a newspaper (if there be a newspaper) three weeks. The petition with proof of publication is then presented to the Governor to be acted upon. Further proceedings may be had before the Governor as provided in this act. It is then provided that he issue his proclamation incorporating the city, town, or village, and therein defining the metes and bounds, and further providing for the appointment of municipal officers. This section of the Code in the case of *Jackson* v. *Whiting,* 84 Miss. 163, 36 So. 611, was held to be constitutional. In that case it is stated that:

"The law in question does not require the Governor to do aught more than decide the question of fact as to whether or no the petition presented to him is sufficient and sufficiently signed, and if it has been posted or published as required therein. These questions being determined affirmatively, the Governor shall, not may, issue his proclamation declaring such village incorporated, and 'defining its limits and boundaries.' "

Under this section the Governor cannot initiate the proceedings which result in the incorporation of munic-

ipalities. These proceedings are initiated by the inhabitants thereof, and the Governor is only empowered to act when the petition for incorporation is presented to him.

Section 3308, Code of 1906 (section 5804, Hemingway's Code), together with the three following sections 3309, 3310, 3311, Code of 1906 (sections 5805-5808, Hemingway's Code), provide for a change in the classification of a municipality and for its abolishment. The power of the Governor to act in this case is to be determined from a consideration of these four sections.

Section 3308, Code of 1906 (section 5804, Hemingway's Code), reads as follows:

"Whenever by a census taken under an act of Congress or of the legislature it shall be shown that the population of a city, town, or village has increased or diminished so as to take or place such city, town or village out of the class to which heretofore it has belonged, or whenever the same is shown by a census of such city, town, or village taken under the direction of the municipal authorities thereof and approved by them as correct, the municipal authorities thereof shall certify the facts to the Governor, who shall investigate the matter; and if he find the municipality to be wrongfully classed he shall issue his proclamation in accordance with the facts, and shall correctly classify it, transmitting a copy of the proclamation to the mayor of such city, town or village."

This section deals with three different kinds of a census: The first, one taken under an act of Congress (as the one under consideration in this case); second, one taken under an act of the legislature; third, one taken by the authorities of the city, town, or village. When by a census taken in any one of these three ways "it shall be shown that the population of a city, town or village has increased or diminished so as to take or place such city, town or village out of the class to which heretofore it had belonged," then, and not until then, is the Governor empowered to act in any way in the matter.

It is unnecessary for us to decide in this case whether or not the Governor is empowered to act only after the census return which shows a change in the classification of a municipality has been certified to him by the municipal authorities, or whether such certification .relates alone to a census taken under the direction of the municipal authoritites, and does not refer to a census taken under federal or legislative authority, for the reason that the census itself must show a change in the classification of a municipality before the Governor is empowered to act in the matter. It is only when this change is shown that the Governor can investigate the matter and reclassify the municipality.

Section 3311, Code of 1906 (section 5808, Hemingway's Code), is as follows:

"In the performance of his duties under this chapter, the Governor shall not be bound by the returns of a census, if he be of opinion that the same are fraudulent. In such case he may appoint a competent person to take a correct census of the municipality, and verify the same by affidavit and submit it to the Governor, and on this report he shall classify or abolish municipalities accordingly. The cost of taking the census shall be paid by the municipality."

The performance of the duties of the Governor under this chapter, mentioned in this section, merely relate to the duties he is called upon to perform where there has been a change in the municipality as provided in section 3308, or for the abolishment of the municipality provided for in section 3310.

The authority of the Governor with reference to the reclassifying of the municipality is found in these two sections of the Code of 1906 (3308 and 3311). Under these sections, until a census return has shown either such an increase or decrease in the population as indicates that it now belongs to a different class of municipality, then, and not until then, is the Governor empowered to act. Whether the Governor has been vested with the power and jurisdiction to reclassify this municipality is a judicial

question to be determined by the court.  7 R. C. L. p. 1050, section 85, and authorities cited thereunder.

The federal census return showed no such change in the municipality of Oxford.  It was a city before the census was taken, and the final census showed it to be still a city.  The Governor therefore had no power to act in the matter.  The powers of the Governor with reference to the incorporation of municipalities are prescribed in sec. 3312 of the Code of 1906, sec. 5809, Hemingway's Code. The jurisdictional facts which give him the power to act in that instance, viz. the petition, etc., are enumerated in that section.  His powers with reference to abolishing municipalities are set out in sections 3310 and 3311 of the Code of 1906, and his powers to reclassify, based upon a change as shown by a census, are governed by sections 3308 and 3311 of the Code.  Under these sections are prescribed the duties of the Governor with reference to the incorporation, change of classification, and abolishment of municipalities.

The judgment of the circuit court is affirmed.

*Affirmed.*

Etheridge, J. *dissenting·*

I am unable to agree with the majority, and base my disagreement upon two propositions: First, that the classification of cities is a political question entirely for the determination of the political department of the government, which action is not subject to review by the judicial department; and, second, if mistaken in this position, that the petition for *quo warranto* and the proclamation attached thereto, to which a demurrer was sustained, states a cause of action, and, if any defense can be made to it, or any attack made upon the classification, it must be done by pleading the facts which would show that the Governor's action was unauthorized and erroneous.

In Cooley's Constitutional Law (1898 Ed.), at page 157, under the heading "Political Questions," it is said:

"Over political questions the courts have no authority, but must accept the determination of the political departments of the government as conclusive. Such are the questions of the existence of war, the restoration of peace, the *de facto* or rightful government of another country, the authority of foreign ambassadors and ministers, the admission of a state to the Union, the restoration to constitutional relations of a state lately in rebellion," etc.

See, also, *Luther* v. *Borden,* 7 How. 1, 12 L. Ed. 581; *Taylor* v. *Beckham,* 178 U. S. 548, 20 Sup. Ct. 890, 1009, 44 L. Ed. 1187; *Marshall* v. *Dye,* 231 U. S. 250, 34 Sup. Ct. 92, 58 L. Ed. 206; *State of Mississippi* v. *Stanton,* 6 Wall. 50, 18 L. Ed. 721; *Pacific States Tel. Co.* v. *Oregon,* 223 U. S. 118, 32 Sup. Ct. 224, 56 L. Ed. 377; *Kierman* v. *Portland,* 223 U. S. 151, 32 Sup. Ct. 231, 56 L. Ed. 386, which cases will receive further attention later in this opinion.

In order to present my views on this question clearly, it will be necessary to set out a portion of the petition for *quo warranto* and a portion of the Governor's proclamation and some of the statutes bearing upon the subject. From the petition I quote the following:

"That on the —— day of January, 1921, L. M. Russell, Governor of Mississippi, acting on authority conferred on him by law, issued a public proclamation appointing P. B. Furr to take a census of the town of Oxford; the said Governor in said proclamation appointed P. B. Furr, stating that he believed that the census as taken by the United States was fraudulent; and the census having been taken under order of the Governor by the said P. B. Furr, certified by him and properly verified, and it appearing that the said town of Oxford has a population of less than two thousand inhabitants, that the said Governor issued his proclamation demoting the said city of Oxford to the town of Oxford, and that proclamation has been spread on the minutes of said municipality as required by law.

"The relator would further show that the said town of Oxford, the erstwhile city of Oxford, was up to the time

of said proclamation operated under Laws of 1912, chapter 120, providing for the commission form of government.

"Your relator further charges that the said chapter 120 of the Laws of 1912, providing for the commission form of government, is applicable only to municipalities of the class of cities, and not towns."

From the proclamation attached to the petition I quote the following:

"Whereas, by virtue of the authority vested in me under the Constitution and Laws of the state of Mississippi, and especially by virtue of section 3311 of the Code of 1906 (Hemingway's Code, section 5808), I, as Governor of the state of Mississippi, on December 22, 1920, designated Mr. P. B. Furr, of Oxford, Lafayette county, Miss., he being a competent person, to take a correct census of the municipality of Oxford, by an instrument in writing to this effect, for the reason that I believed that the final census returns of the United States government as to said municipality were fraudulent, in that it purported to show and did show a larger number of persons in said municipality than the number of two thousand, when in truth and in fact I was of the opinion that there were many less than this number of persons in said municipality; and

"Whereas, the said P. B. Furr, by virtue of the said instrument in writing, has performed his duty in taking what I deem to be a correct census of said municipality, and has filed with me an instrument, the same being a numerical list of the names of all citizens in said municipality, and has verified same by an affidavit and submitted such instrument to me as the result of his labors in taking said census, which said numerical list shows the total number of persons in said municipality to be 1807, and therefore the municipality of Oxford is not entitled to be classified as a 'city,' but only as a 'town,' and hence should be reclassified accordingly."

Section 3299, Code of 1906 (section 5795, Hemingway's Code), classifies municipalities under cities, towns, and

villages, and provides that municipalities having two thousand or more are cities, and those having less than two thousand and not less than three hundred are towns.

Section 3308, Code of 1906 (section 5804, Hemingway's Code), provides how to determine to which class a municipality belongs and reads as follows:

"Whenever by a census taken under an act of Congress or of the legislature it shall be shown that the population of a city, town, or village has increased or diminished so as to take or place such city, town or village out of the class to which heretofore it has belonged, or whenever the same is shown by a census of such city, town, or village taken under the direction of the municipal authorities thereof and approved by them as correct, the municipal authorities thereof shall certify the facts to the Governor, who shall investigate the matter; and if he find the municipality to be wrongfully classed he shall issue his proclamation in accordance with the facts, and shall correctly classify it, transmitting a copy of the proclamation to the mayor of such city, town, or village."

Section 3309, Code of 1906 (section 5805, Hemingway's Code), provides that the proclamation shall be published and recorded as an ordinance is published and recorded, and "shall be conclusive from its issuance of the matter determined by it, until there be a new classification under the provisions of this chapter."

Section 3310, Code of 1906 (sections 5806 and 5807, Hemingway's Code), provides that:

"If in any case the census show that a municipality hereafter created contains less than one hundred inhabitants, the Governor shall issue his proclamation abolishing the same," etc.

Section 3311, Code of 1906 (section 5808, Hemingway's Code), reads as follows:

"In the performance of his duties under this chapter, the Governor shall not be bound by the returns of a census, if he be of opinion that the same are fraudulent. In such case he may appoint a competent person to take a correct

census of the municipality, and verify the same by affidavit and submit it to the Governor, and on this report he shall classify or abolish municipalitites accordingly. The cost of taking the census shall be paid by the municipality."

Other provisions of chapter deal with the incorporation of municipalities and impose duties upon the Governor.

It will be noted from reading section 3308, Code of 1906, that the language of the section is involved, and it is somewhat difficult to tell with exactness whether or not a census taken by the United States shall be certified by the municipal authorities to the Governor, but it is manifest to my mind that the section did not intend to confer a power or impose a duty on a municipality to certify to the Governor the result of the census of the United States or by the state of Mississippi, but only required the municipality to certify to the correctness of the census taken by its own authority. The purpose of the section, as I understand it, is to confer on the Governor the power to reclassify municipalities after each census either by Congress or by the state, and, if the Governor believes from any information that the census is fraudulent, that he shall appoint a person to verify the census by enumerating the inhabitants. The statute did not contemplate that the Governor could take this action when the fraud was committed one way, and not be able to checkmate the fraud when it operated the other way. This view is especially strengthened when we consider the language of the other sections between 3308 and 3311 and those sections which follow section 3311.

Under section 3311, Code of 1906 (section 5808, Hemingway's Code), it will be noted that in the performance of his duties under this chapter of the Code the Governor shall not be bound by the returns of the census if he be of the opinion that the same are fraudulent. This is not a part of section 3308, but it is a comprehensive section dealing with all census having to do with municipal populations and gives the Governor full power to insure accuracy in the populations so that they may be properly

classified. In some of the sections above referred to, it says "if it appear from the census" just as it says "shall be shown" that the population of a municipality has increased or diminished in section 3308. It would be folly to attribute to the legislature the purpose to give the Governor in one statute the authority to review a census, and not in another. The statute does not anywhere require the Governor to proceed upon notice or to be informed by any person or set of persons other than as to a census taken by the municipal authorities.

The classifications of cities is purely a political matter. The powers of cities in many respects are dependent upon their population, and it is highly important that the classification be made final, and the express language of section 3309, Code of 1906, makes it final until a new classification is arrived at in the manner provided. It was never contemplated that the Governor would proceed upon notice and hearing, nor that he would proceed with the technical precision required in legal proceedings. The legislature has full power to classify municipalities and make its action final, and of course it may make the action through such agency as it may provide and make its agent's action final.

In judicial proceedings involving special statutory powers the pleadings must show jurisdiction, but that does not apply to executive action.

In the case of *Luther* v. *Borden,* 7 How. 1, 12 L. Ed. 581, the question was presented to the judicial department of the national government to determine whether or not one of the states had a republican form of government under article 4, section 4, of the United States Constitution, which provides:

"The United States shall guarantee to every state in this Union a republican form of government, and shall protect each of them against invasion; and on application of the legislature, or of the executive (when the legislature cannot be convened) against domestic violence."

It seems to me that it was highly important in that case to determine who rightfully constituted the state government. Every citizen, and especially every taxpayer, was vitally interested in knowing to what government or to what authority he owed allegiance, but the court in a learned opinion held that that question was for the political department of the government, that is, the national Congress; that it was not a judicial question.

In the cases of *Georgia* v. *Stanton* and *Mississippi* v. *Stanton*, 6 Wall. 50, 18 L. Ed. 721, the states of Georgia and Mississippi sought to obtain a decision from the United States supreme court as to their *status* as states and to enjoin the usurpation of authority by the national Congress and officers of the national government, and the court held that it was without jurisdiction because that question was a political question, and not a judicial question; that the judicial power could only be exercised when the rights which were in danger were the rights of persons or property, and not merely political rights; that, where a bill called for the judgment of the court upon political questions and upon rights not of person or property, but of a political character, the court possessed no jurisdiction over the subject-matter presented in the bill for relief. It was much more important to the people of the states to have the question settled judicially than it is in the case before us.

The case of *Taylor* v. *Beckham*, 107 U. S. 548, 20 Sup. Ct. 890, 44 L. Ed. 1187, was a case where Taylor was claimant for the Governor's office of Kentucky. The Legislature declared Goebel elected. Goebel having been killed, Beckham, who was Lieutenant Governor, was entitled to succeed Goebel in office, and brought suit in *quo warranto* against Taylor to obtain possession of the office. The court of Kentucky decided favorably to Beckham, and Taylor appealed to the federal supreme court. Under the Constitution of Kentucky and under the decisions of the court of that state, the legislature was the final judge of who was elected Governor. Mr.

Chief Justice Fuller of the United States supreme court in a learned opinion held that a decision by a state tribunal against the claimant to office does not deprive him of any right to property within the meaning of the United States Constitution, Amendment 14, so as to give the federal supreme court jurisdiction on writ of error; also that section 4 of article 4, United States Constitution, guaranteeing a republican form of government, did not authorize the federal court to entertain jurisdiction, and that the controversy was a political, and not a judicial, controversy.

*Pacific States Tel. Co.* v. *Oregon,* 223 U. S. 118, 32 Sup. Ct. 224, 56 L. Ed. 377, was a case where the telephone company sought to challenge the validity of legislation enacted through the initiative and referendum on the ground that this law violated section 4, art. 4, of the United States Constitution, guaranteeing a republican form of government. The court again reviewed the authorities upon the question,. and again held that this presented a political question, and not a judicial question. The reasoning of the opinion is very convincing, and shows the danger of the courts undertaking jurisdiction of controversies which do not properly belong to them. To the same effect are *Kierman* v. *Portland,* 223 U. S. 151, 32 Sup. Ct. 231, 56 L. Ed. 386, and *Marshall* v. *Dye,* 231 U. S. 250, 34 Sup. Ct. 92, 58 L. Ed. 206.

The supreme court of this state, in *State* v. *Dinkins,* 77 Miss. 874, 27 So. 832, discusses this subject and calls attention to the binding effect of decisions of the political department in matters conferred upon them by law. The case arose out of an action against the state to recover a reward offered by the government for the capture and conviction of an absconding criminal. One-half of the reward was to be paid on delivery of the escaped criminal to the sheriff, and the other half upon conviction. There was a conviction, but the Governor declined to pay the one-half of the reward offered on condition of conviction and suit was brought against the state. The court quoted

in its opinion from Judge Cooley, the eminent constitutional lawyer, in a case decided by the Michigan court, of which he was then a member, saying:

" 'The law must leave the final decision upon every claim and every controversy somewhere, and, when that decision has been made, it must be accepted as correct. The presumption is just as conclusive in favor of executive action as in favor of judicial. The party applying for action, which, under the Constitution and laws, depends on the executive discretion, or is to be determined by the executive judgment, if he fails to obtain it, has sought the proper remedy, and must submit to the decision.' *Sutherland* v. *Governor*, 29 Mich. 320, 330. The reasoning of the court in this class of cases proceeds upon the principle that the legislative, executive, and judicial branches of government are co-ordinate, equal, separate, and independent departments of the government, and that the powers and duties of one of these departments cannot be performed through the instrumentalities of one of the other departments of the government. For if the authority confided to any one department of government may be exercised by another department of the government, the integrity and independence of the department whose powers are usurped by the other are lost and destroyed. This cardinal principle of constitutional governments among the American states is sustained by reasoning of unsurpassed ability by the judges in the Michigan case above cited, and in *Hawkins* v. *Governor*, 1 Ark. 570, and *State* v. *Governor*, 25 N. J. 331.

"All the duties enjoined upon the chief executive of the state are imposed by the Constitution or by law. They are political in their nature, not ministerial, and are of such administrative character that they are wholly confided to his sole judgment and discretion. In *Vicksburg, etc., R. R. Co. v. Lowry*, 61 Miss. 102. Chief Justice Campbell emphasized the integrity and independence of the head of the executive branch of the government by declaring that the Governor could not be compelled to do any act.

"Undoubtedly we indulge the presumption, as it is our duty and pleasure to do, that the Governor rightly refused his order in the instance here before the court. The record discloses that the person arrested surrenderd himself upon an understanding had with his counsel that a part of the reward was to be applied to the making of his defense. If the case had been one of which the court had jurisdiction, the verdict should have been for the state. But we do not rest our decision upon that ground. We prefer to place it distinctly upon the ground that the action of the executive cannot be coerced, nor can the effect of his refusal to act be evaded by an application to the judicial department of the government. What cannot be done directly should not be done by indirection."

See, also, *Ramey* v. *Woodward,* 90 Miss. 777, 44 So. 769; *State* v. *Brown,* 90 Miss. 876, 44 So. 769.

The court further decided in *V. & M. R. R. Co.* v. *Lowry,* 61 Miss. 102, 48 Am. Rep. 76, that the Governor could not be controlled in the performance of ministerial duties by the courts; that he was a separate department of the government, and not subject to the control of the courts. There are many decisions in this state to the same effect as to different functions of the legislative and executive departments.

Section 70 of the Constitution provides that no revenue bill nor any bill providing for any assessment of property for taxation shall become a law except by three-fifths of the members of each house present and voting, but the court held in *Hunt* v. *Wright,* 70 Miss. 298, 11 So. 608, that, while this section was binding on the legislature, the court could not take cognizance of the matter where the legislature disregarded the Constitution, and that the legislature could not be controlled by the court on such question, but the decision of that question was entirely for the legislature.

Section 71 of the Constitution provides that every bill shall have a title, etc., but the court held that the title and the sufficiency thereof is a legislative, and not a ju-

dicial, question. *Lang* v. *Board of Supervisors,* 114 Miss. 341, 75 So. 126; *State* v. *Phillips,* 109 Miss. 22, 67 So. 651, L. R. A. 1915D, 530; *University* v. *Waugh,* 105 Miss. 623, 62 So. 827, L. R. A. 1915D, 588; *Ex parte Wren,* 63 Miss. 512, 56 Am. Rep. 825.

It has also been held, even where the personal liberty of the citizen was affected, that the Governor's warrant ordering the arrest precluded the defendant from showing that he was not within the state where the alleged crime was committed at the time of the commission thereof. *Ex parte Edwards,* 91 Miss. 621, 44 So. 827; *Ex parte Devine,* 74 Miss. 715, 22 So. 3.

Political questions as distinguished from judicial questions deal with political rights as distinguished from personal and property rights. See "Political Questions" and "Political Rights," Words and Phrases, First and Second Series, and Bouvier's Dictionary (3d Ed.).

The Governor has many questions to decide in the performance of his duties, and his decisions on these questions are final and conclusive on the other departments of the Government. For instance, he is limited in granting a pardon to such cases as where publications have been made for thirty days in a newspaper of the county, but his decision as to whether the publication was made is not open to judicial review. Many other duties involve inquiry into facts, but his decision upon such facts are binding unless they invade the rights of the citizen to life, liberty, and property. He even has the power to declare martial law, and to displace civil authority. In doing so his decision is final and conclusive, subject only to the power of the legislature to impeach him for abuse of his power.

In the case of *Ocean Steam Navigation Co.* v. *Strahan,* 214 U. S. 320, 29 Sup. Ct. 671, 53 L. Ed. 1013, it was held by the United States supreme court that Congress would lawfully confer upon the Secretary of Commerce and Labor power to enforce, without invoking judicial aid, the penalty imposed by the act of March 3, 1903 (32 Stats. at

Large, 1213, chapter 1012, section 9), for bringing into the United States an alien afflicted with dangerous diseases, etc. To the same effect is *International Mercantile Marine Co.* v. *Stranahan,* 214 U. S. 344, 29 Sup. Ct. 678, 53 L. Ed. 1024. Many other authorities could be cited with analogous holdings, but would unduly protract this opinion.

On the second proposition I desire to say that the executive proclamation and the allegations of the petition for *quo warranto* make a *prima facie* case at least good against demurrer. If the act of the Governor is subject to judicial review at all, it devolved upon the defendants to set forth the facts by proper pleading which would show that the conditions for its exercise did not exist. This position is distinctly upheld by the cases of *Ex parte Edwards,* 91 Miss. 621, 44 So. 827, and *Ex parte Devine,* 74 Miss: 715, 22 So. 3.

Under our system of tripartite government, confiding the executive powers to one department, the legislative to another, and the judical to a third department, it is important to decline jurisdiction of controversies not properly belonging to the court. The executive of the state is elected by all the people of the state, that is to say, by a majority of them, while each member of this court is elected by a minority of the people, being only required to have a majority of the voters of a district composed of one-third of the people of the state.

The fidelity with which the judiciary has discharged its duties has often made people seek the aid of the judiciary in questions of a purely political nature, and sometimes, though in rare instances, the court has not properly discriminated between its own functions and those of the other departments. Judges at last are but men subject to the imperfections and frailties of other men, encompassed by error, seasoned with sin, and fettered by fallibility; therefore they should act with caution in taking cognizance of controversies to see that they do not encroach upon the functions of the other departments of government.