THE STATE OF KANSAS, *on the relation of S. B. Bradford, Attorney General,* v. THE BOARD OF COMMISSIONERS OF SHERMAN COUNTY.

1. NEW COUNTIES, *Organization of; Cumulative Acts.* Chapter 24, Comp. Laws of 1885, relating to the organization of new counties, and chapter 128, Laws of 1887, amendatory thereof, do not repeal chapter 26, Laws of 1885, (the general county-seat-location law,) but are additional, or cumulative acts.

2. NOTICE; *County-Seat Election, Not Set Aside.* A county-seat election will not be set aside because the thirty days' notice of such election, required to be published in one of the newspapers in the county, appeared with the proceedings of the board of county commissioners, if the electors of the county were in fact informed of the time, place, and purpose of the election, and generally took part and voted at the election.

3. LOCATION OF COUNTY SEAT — *Election Within Time — Injunction.* Although an election for the location of a county seat, under chapter 26, Comp. Laws of 1885, must be held within fifty days after the presentation of the petition therefor, yet where a petition was presented on October 3, 1887, and not acted upon by the board of county commissioners until October 10, 1887, on account of a restraining order granted by the district court but dissolved by October 10, the time of the presentation of the petition was thereby extended to October 10 — the date the county board considered and acted upon the petition; and therefore an election ordered on November 22, 1887, was within the fifty days prescribed by the statute.

*Error from Sherman District Court.*

ON November 23, 1887, the state of Kansas, upon the relation of the attorney general, brought its action against the county commissioners of Sherman county to restrain and enjoin them from meeting as a board of canvassers to canvass and declare the result of the returns of an election held in Sherman county on November 22, 1887, to locate the permanent county seat of that county. In the absence of the district judge from the county, a temporary injunction was granted by the probate judge. On February 1, 1888, a motion to dissolve the temporary injunction was heard by the district judge at chambers, at Norton, in Norton county. The parties filed with the judge the following agreed statement of facts:

"1. The defendant is the board of county commissioners, composed of John Bray, E. L. Lyons, and Chas. E. Bennett.

"2. Sherman county was organized September 20, 1886, at which time the town of Eustis was designated by the governor as the temporary county seat.

"3. An election for county officers, and for the location of the permanent county seat of said county, was held November 8, 1886, at which no town received a majority of the votes cast for said county seat.

"4. The permanent county seat had not been located, and no county buildings had been erected in said county on October 3, 1887, at which time a legal and proper petition, signed by a majority of the legal electors of the county, was presented to the board of county commissioners, requesting it to call an election for the location of the permanent county seat; and on said day an injunction proceeding was commenced in the district court and an order made therein by Judge Pratt and served upon the defendants, restraining them from calling said election until the application for injunction should be heard before him at chambers, in Atwood, Rawlins county, on the 6th instant, by reason whereof the board delayed further action, subject to the order of the judge upon the application for said injunction, and continued the further examination of said petition until October 10, 1887.

"5. The judge having dissolved said restraining order, and refused to grant said injunction, the board met pursuant to said adjournment, and having examined said petition and adjudged it legal and sufficient, made the following order, to wit:

"'This cause coming on to be heard on the petitions of the electors to call an election for the location of the county seat of Sherman county, Kansas: the board of county commissioners being duly organized for business in regular session, present Geo. W. Benson, county clerk of said county. The said board having examined the last assessment rolls of said county, and finding that a majority of the electors of said county, as ascertained from said last assessment rolls of said county, and that said petition contained 1,150 names; whereof it is considered, ordered and adjudged that an election will be held November 22, 1887.

"'STATE OF KANSAS, COUNTY OF SHERMAN, ss.—I, Geo. W. Benson, county clerk of the aforesaid county and state, do hereby certify that I have received no fees belonging to said county.

· Attest:                                  GEO. W. BENSON, *County Clerk.*
                                           JOHN BRAY, *Chairman.*'

"6. The *Sherman County Dark Horse* and the *Sherman County Republican* are each newspapers published in Sherman county, and said election notice was published in and as a part of the commissioners' proceedings, in the *Sherman*

*County Dark Horse,* in the issues of October 20 and 27, 1887, respectively.

"7. At said time John Bray was the chairman of the board of county commissioners, and R. G. Albright the sheriff of said county.

"8. The said board regarding this notice as informal, John Bray, as the chairman thereof, prepared and caused to be published in the *Sherman County Republican,* in the issue of October 28th, and in each succeeding issue thereof until the election, November 22, 1887, a more formal notice of said election, of which the following is a copy, to wit:

"'NOTICE OF COUNTY-SEAT ELECTION.

"'Whereas, on the — day of October, 1887, a petition asking for the calling of a county-seat election in Sherman county, Kansas, was duly presented to the board of county commissioners of said county; and whereas, said petition was, by said board of commissioners, examined and adjudged sufficient and legal, and that it contained the signatures of a majority of the electors of said county: now, therefore, it is hereby ordered by the board of county commissioners that an election be held at the usual voting places in each of the election precincts of Sherman county, Kansas, on Tuesday, November 22, 1887, for the location of the permanent county seat of said county; and that all ballots cast at said election must be headed 'For the county seat' and following thereafter shall be the name of the place for which the elector desires to vote. JOHN BRAY,

*Chairman Board County Commissioners.*

"'In witness whereof, I have hereunto subscribed my name, and affixed my official seal.

"'Attest: GEO. W. BENSON, *County Clerk.* [L. S.]'

"This notice was made and signed by the chairman, John Bray, at his residence twelve miles distant from the county clerk's office, in the absence of the other members of the board, and by him transmitted to County Clerk Benson, who affixed his attestation thereto, and caused it to be published as aforesaid.

"9. Sheriff R. G. Albright posted at the several voting places in the county, October 23, 1887, a notice of said election, and caused a copy thereof to be published in the *Sherman County Republican,* in the issue of October 28, 1887, and in each succeeding issue thereof until November 22, 1887. The following is a true copy of the notice published and posted by the sheriff as aforesaid, to wit:

"'NOTICE.—*Proclamation for County-Seat Election.*—I, R. G. Albright, sheriff of Sherman county, Kansas, by virtue of the authority vested in me by the laws of the state of Kansas, hereby give notice to the qualified electors of Sherman county, Kansas, that on Tuesday, November 22, 1887, an election will be held at the usual voting places in said county, for the location of the permanent county seat of said county, and that all ballots cast at said election must be headed 'For the county seat,' and following thereafter shall be the name of the place for which the elector desires to vote. R. G. ALBRIGHT, *Sheriff.*'

"10. A legal registration was duly had in each of the voting precincts of the county, and said election was duly held November 22, 1887, resulting as follows, to wit:

| VOTING PLACES. | NO. OF ELECTORS REGISTERED. | NO. VOTES CAST FOR | | |
|---|---|---|---|---|
| | | *Good-land.* | *Voltaire.* | *Eustis.* |
| Shermanville Township..................... | 201 | 80 | 1 | 119 |
| Washington Township, Precinct No. 1....... | 202 | 72 | .... | 125 |
| "　　　"　　　"　　No. 2....... | 83 | 43 | .... | 16 |
| Voltaire Precinct......................... | 250 | 101 | 11 | 122 |
| Itasca No. 1.............................. | 333 | 190 | .... | 130 |
| "　No. 2............................. | 113 | 72 | .... | 31 |
| McPherson Township, Precinct No. 1....... | 155 | 145 | .... | 10 |
| "　　　"　　　"　　No. 2....... | 125 | 75 | .... | 44 |
| Grant Township.......................... | 219 | 94 | .... | 85 |
| Totals............................... | 1,681 | 872 | 12 | 682 |

"The election officers, having duly canvassed the votes cast at said election, returned the poll-books and ballots to the various township clerks and the county clerk of said county, to be canvassed by the defendants, when the plaintiff herein caused the probate judge of said county to enjoin the canvass thereof.

"11. The petition for the injunction herein was not filed in the office of the clerk of the district court until after the injunction had been granted by the probate judge.

"12. At the trial of the motion to dissolve, before Judge Pratt, the plaintiff admitted that it had examined the petition filed with the defendants, requesting them to call the election, and found it to be a legal and sufficient petition."

The district judge found, as a matter of fact, that the allegations of the petition for the injunction, other than as qualified by the admissions of fact contained in the agreed statement of facts submitted, were untrue. Upon the pleadings, agreed statement of facts and admissions, the temporary injunction was dissolved and wholly vacated. The plaintiff excepted, and brings the case here.

*S. B. Bradford*, attorney general, *Bagley & Andrews*, and *W. A. S. Bird*, for plaintiff in error.

*Fred. A. Albee*, county attorney, for defendant in error; *Brown & Knight*, and *D. Rathbone*, of counsel.

The opinion of the court was delivered by

HORTON, C. J.: Sherman county was organized September 20, 1886, at which time Eustis was designated by the governor as the temporary county seat of the county. A special election was held on November 8, 1886, for the permanent location of the county seat. Eustis received three hundred and seventy-six votes; Sherman Center, three hundred and fifteen votes; and Voltaire, two hundred and forty-one votes. The election therefore resulted in no choice, as none of the towns voted for received a majority of the votes cast. On October 3, 1887, a petition was filed under § 1, ch. 26, Comp. Laws of 1885, of the "Act concerning the location and removal of county seats" for an election for the permanent location of the county seat of the county. On October 10, 1887, upon the petition presented, the board of county commissioners ordered an election to be held November 22, 1887. The election was held, and Goodland received eight hundred and seventy-two votes; Eustis, six hundred and eighty-two votes; and Voltaire, twelve votes. On the part of the plaintiff, it is alleged that this election was void. The defendants contend that the election was legally called and held; and, as Goodland received a majority of the votes cast, that it is the permanent county seat of the county. It is admitted that the petition presented to the board of county commissioners prior to the calling of the election, was legal and sufficient. It is also admitted that a legal registration was held in each of the voting precincts of the county, in accordance with the provisions of the statute, prior to November 22, 1887. The number of electors registering was one thousand six hundred and eighty-one. Of these, one thousand five hundred and sixty-six voted at the election.

I. It is claimed, on the part of the plaintiff, that the provisions of ch. 26, Laws of 1885, concerning the location of county seats, have no application to Sherman county; and in order to locate the permanent county seat of that county, that proceedings must have been taken under ch. 24, Comp. Laws

of 1885, "relating to the organization of new counties;" and ch. 128, Session Laws of 1887, amending chapter 24. It is further claimed, on the part of the plaintiff, that on account of § 8, in said chapter 128, no election could be held in Sherman county for the location of the permanent county seat, without further legislation, as the second election must be held in not less than thirty nor more than forty days after the first election. Both of these claims are untenable. The general county-seat-location law is broad, and may include every organized county, no matter under what circumstances its county seat has been located, or what buildings have been erected. (*Benton v. Nason*, 26 Kas. 658.) If proceedings are commenced under that law, of course its provisions must be strictly followed out. The act relating to the organization of new counties, and chapter 128, Session Laws of 1887, amendatory thereof, are additional, or cumulative. Under § 8 of said chapter 128, it was the duty of the sheriff of Sherman county, after the passage of said act, to issue his proclamation for another election for the permanent location of the county seat, to be held in not less than thirty nor more than forty days after the issuance of his proclamation; and if the provisions of said chapter 128 had been pursued in the calling of the election of November 22, 1887, the election could have taken place under that act, and the county seat located thereby. If the allegations in the petition for the injunction, "that R. G. Albright, the duly-qualified and acting sheriff of said county, issued his proclamation pretending to call another election for the location of the permanent county seat of said county, in pursuance of § 8 of chapter 128 of the Session Laws of 1887, which proclamation was first issued and published on October 23, 1887, giving notice that an election for the location of the permanent county seat of the county would be held on November 22, 1887," were true, then the election was called in strict compliance with the provisions of chapter 128, Session Laws of 1887. It appears, however, from the agreed statement of facts, that he proclamation of the sheriff for the second election for the

*1. New counties, organization of; cumulative acts.*

permanent location of the county seat of the county was not proclaimed or published until October 28, 1887, less than thirty days prior to the election held on November 22.

II. It is next claimed that no legal notice, as required by the general county-seat-location law, was given. That law provides that the county commissioners "shall cause thirty days' notice of any such election to be given, by publication in one or more newspapers published in the county, or by posting printed or written notices at the several voting places in the county." The order calling the election of November 22, 1887, was published in the *Sherman County Dark Horse*, on October 20 and 27, 1887, respectively. This notice was published as a part of the commissioners' proceedings, but it was signed by John Bray, chairman, and attested by George W. Benson, county clerk. Therefore it was an official publication; and although it was published with the commissioners' proceedings, it does not appear to have been overlooked by the voters of the county, or to have misled them in any manner whatever. This was followed by the official publication in the *Sherman County Republican*, on October 28, and in each succeeding issue until November 22, of a further notice of the election, signed by John Bray, chairman, and attested by George W. Benson, county clerk. On October 23, 1887, the sheriff posted at the several voting precincts in the county, notices of the election, and also caused a copy thereof to be published in the *Sherman County Republican* on October 28, 1887, and in each succeeding issue thereof until November 22, which notice was officially signed by such sheriff. At the election on November 22, all of the persons registered voted, excepting one hundred and fifteen. Goodland received a majority over Eustis and Voltaire of one hundred and seventy-six. Therefore if all the registered persons not voting at the election had voted against Goodland, that town would have received about sixty majority. The notice of the county-seat election published in the *Sherman County Dark Horse* on October 20, 1887, was more than thirty days prior to the election of November 22, 1887; and the most that can be said against

the notice is that it was not as complete as it might have been, and that it was published with other official proceedings of the board of county commissioners. But as thirty days' notice of the election was given officially by publication in a newspaper of the county, and as this was followed up by other official publications of the election in the newspapers of the county, and as there was an election in accordance with the order of the board of county commissioners and the notices given of such election, and as the people of the county voted, and as it is not shown that any portion of them failed in knowledge of the pendency of the question, and as Goodland received a majority not only of all the persons voting, but also of all persons registered, we do not think that the people of Sherman county are to be disfranchised, or are to be deprived of their voice as to the location of the county seat of their county, because the notice published October 20, 1887, was not more formal, or because it appeared as a part of the proceedings of the commissioners. A notice was given in time, and the electors of the county were in fact informed of the time, place and purpose of the election. No one was misled by the official proclamation published October 20, and the electors not only had actual notice of the election by the various official publications made, but they in fact took part in the election, and determined for themselves the permanent location of the county seat. *Jones v. State*, 1 Kas. 273, is not applicable, because in that case no proclamation or notice was issued by the commissioners. In deciding this case, however, we do not intend to go beyond the case before us as presented by its own peculiar facts. All that this court has heretofore said concerning the necessity of notices to be given of special elections, is fully affirmed.

III. Finally, it is claimed that the election was not held within fifty days after the presentation of the petition. *Gossard v. Vaught*, 10 Kas. 162, is cited. In that case the petition was presented on February 16, 1872, and the election ordered and held on the 1st day of June—one hundred and six days thereafter. In this case the petition was presented

*2. Notice; county-seat election, not set aside.*

on October 3, 1887, and when the board of county commissioners was about to consider the same, it was restrained from calling the election by an order of the district court. Subsequently the restraining order was vacated, and on October 10, 1887, the election was ordered. October 10 to November 22 is less than fifty days. The county commissioners did not 3. Location of voluntarily defer any action, but their action was county seat— election within postponed through the restraining order of the time—injunc- tion. district judge, and the time of the presentation of the petition was extended from October 3 to October 10; and therefore, within the statute, the election was held within fifty days after the presentation of the petition.

The judgment of the district court will be affirmed.

All the Justices concurring.