STATE OF MISSISSIPPI EX REL. JACOB W. BARBEE *v*. JAMES N. BROWN ET AL.

[44 South., 769.]

PRIMARY ELECTIONS. *Contests.  Judicial review.  Mandamus.  Recounts.  Jurisdiction.*

The circuit court has no jurisdiction of a suit:—

(*a*) To contest the result of a political party primary election; nor by mandamus.

(*b*) To compel the executive committee of a political party to recanvass the votes cast at such an election.

FROM the circuit court of De Soto county.

HON. SAMUEL C. COOK, Judge.

The state, suing on the relation of Barbee, appellant, was plaintiff in the court below; Brown and others, appellees, were defendants there. The suit was for a mandamus, and from a judgment sustaining a demurrer to the petition and dismissing the suit the plaintiff appealed to the supreme court.

The relator, Barbee, and one Lauderdale, were rival candidates in the Democratic primary election for the nomination for sheriff. The county Democratic executive committee canvassed the returns and declared Lauderdale the party nominee. The relator filed his petition in the circuit court, making as parties defendant Brown and the other members of the executive committee. The petition set out certain irregularities and frauds alleged to have been practiced at Love precinct, and prayed that the committee reassemble, and hear evidence, and investigate the true results of the ballots cast at Love precinct, and declare the result.

*Julian C. Wilson* and *R. L. Dabney,* for appellant.

The remedy here sought is a mandamus to require the legally

established authorities of a political party to do what was requisite upon them in law.   That mandamus should lie is evident.   Code 1906, § 3231, provides that "the writ of mandamus shall be issued by the circuit court, commanding any inferior tribunal, corporation board, officer, or person to do or not to do an act, the performance or omission of which the law specially enjoins, as a duty resulting from an office, trust or station, where there is not a plain, adequate and speedy remedy in the ordinary course of law."

Is the character of a political executive committee, working under our statute law, such that mandamus is applicable in any event?   Formerly the Democratic executive committee was the supreme tribunal of the Democratic party in Mississippi, determining when and how and by whom nominations should be made; and it met when it chose to meet.   The legislature of 1902 stripped from it the selection of the method and time, as well as the determination of participants in party elections; practically the only power left being the ministerial one now provided, and the judicial function of settling all controversies. Laws 1902, secs. 14, 110.   Under this state of affairs the case of *Brewer* v. *Abbay,* 82 Miss., 559, was decided by this court. A change was made by the Code of 1906, the legislature showing a manifest intent to give no more functions to the executive committee than to the county election commission.   It had ceased to be a legislative body by the passage of the Laws of 1902; and, as a result of the adoption of the Code of 1906, it ceased to be a judicial or *quasi*-judicial body, and its members became merely ministerial officers, having slightly more than the duties of county election commissioners.   This is apparent from a consideration of Code 1906, § 3705, prescribing the duties of the executive committee; and Code 1906, § 4178, prescribing the duties of the county election commissioners.

From the foregoing it is apparent that it is the duty of the executive committee to comply with the law that limited it,

and continued it in force; that is to say, its duty is to receive and canvass returns, declare the result of the vote, and announce the name of the party nominee. The committee has no right to canvass anything but the returns. *Oglesby* v. *Sigman,* 58 Miss., 510. The returns mentioned in the statute merely consist of the papers announcing the result in the different precincts and certified to by the different precinct officers.

As the executive committee received and canvassed a set of returns from Love precinct, which were not properly certified to, and did so after challenge by friends of the relator, Barbee, the committee exceeded its authority. It should have declared the result of the primary election solely from the returns which were regularly sent in; but it failed to do so. We submit, that as the committee failed to perform its duty, it should be compelled to do so; and that mandamus will lie to compel it so to do.

Even if the functions of the executive committee be claimed to be *quasi*-judicial under the statute, we submit, that it had notice to put it on inquiry before counting the returns from Love precinct; and its action was arbitrary, and an abuse of discretion. The rule seems to be clear that a mandamus will never issue to control a discretion, but will issue when there is a fixed duty which should be performed. When an officer or tribunal arbitrarily, or from a mistake as to procedure or power, refuses to go into the merits of controversy about which such officer or tribunal has no discretion, mandamus will issue to require an investigation of the merits. High's Extraordinary Legal Remedies, sec. 151; *Sullivan* v. *Railroad Co.,* 85 Miss., 660; *Ex parte Bradstreet,* 7 Peters, 634, 30 L. Ed., 577; *Ex parte Parker,* 120 U. S., 737, 30 L. Ed., 818; *State v. Taylor,* 104 S. W. Rep., 242.

Although the executive committee must determine for itself what are the returns, its acts are ministerial, and it must get the right returns. *McWhorter* v. *Donald,* 39 Miss., 79; *Chears* v. *Chears,* 81 Miss.; 662; *Chalmers* v. *Myers,* 60 Miss., 766.

We submit, that the authorities are overwhelming to support the issuance of the writ of mandamus in a case such as this. 15 Cyc., 382; 10 Am. & Eng. Ency. of Law, 2 ed., 808; *State v. Garesch,* 65 Mo., 480; McCreary on Elections, 412; *State v. McFadden,* 46 Neb., 668; *People v. Canvassers* (N. Y.), 29 N. E. Rep., 327, 14 L. R. A., 624; *People v. Canvassers* (N. Y.), 29 N. E. Rep., 14 L. R. A., 643; *Smith v. Lawrence* (S. D.), 2 S. D., 185, 49 N. W. Rep., 8; *Morris v. Glover* (Ga.), 49 S. E. Rep., 786; *State v. Board,* 38 Kan., 436, 17 Pac. Rep., 304.

In conclusion, we submit, that the duty of the executive committee is a trust for the benefit of the electors at large, and mandamus should lie, as there is no remedy by injunction. *Ex parte Wimberly,* 57 Miss., 437; *Gibbs v. McIntosh,* 78 Miss., 648, 29 South. Rep., 465.

*Calvin Perkins,* for appellee.

A primary election, under the chapter of the Code on that subject, consists of two parts, two elections, "the first primary" and "the second primary." The first primary may or may not be final as to a nomination; its finality depending on whether or not any candidate shall receive thereat a majority of the popular vote. But the second primary is final in all cases.

It must have occurred to the legislature in making provision for the two primaries, that in the practical application of the primary election law many instances would arise where the first primary would be a finality, because of the large percentage of instances in which the first primary would be final, and because, also, of its forming the *foundation* for the second primary, the lawmakers must reasonably have regarded the first primary as of equal importance with the second. If the legislature intended that the circuit courts should, by reason of a petition for mandamus, exercise supervisory control over the second primary, it must have intended that there should be like supervision as to the first primary.

If the legislature never intended that any tribunal, judicial or otherwise, save only the governing bodies of the respective political parties, the respective executive committees, should be vested with jurisdiction to determine the result of the first primary, it thereupon follows that the legislature so intended as to the second primary and if the legislature had intended that the courts should be open to hear the complaints of those candidates dissatisfied with the result of the first primary as declared by the executive committee, would it not have provided for a "contest," or would it not at least have fixed such an interval of time between the dates of the two primaries as would have been reasonably sufficient to institute, conduct and complete a trial in court?

The language of Code 1906, § 3700, is, "the second primary shall be held three weeks after the first primary"; neither more nor less than *three weeks.* There is no other provision on the subject. If the legislature intended court supervision in the premises, and intended to let the interval between the primaries remain at three weeks, would it not then have at least cut off the right of appeal and the right to new trials, and have made the decision of the circuit court a finality without new trials or appeals?

Let us suppose, as the appellant contends, that the legislature intended to confer upon the courts the power by mandamus to supervise and control the constituted authorities of political parties for determining the candidates for party offices, the law being as it is unchanged with regard to trials of issues of law and trials of issues of fact, new trials, appeals, reversals and other trials. Let us then see how such things could be managed in the court during the interval between the first and second primary. In the case of county offices, at least one day of that time would be consumed by the committee in "canvassing the returns and declaring the result," another day by the claimant in preparing his complaint, and then the other claimant, or whomsoever might be made defendant, would have to

receive five days' notice, thus leaving less than two weeks of the limited three weeks' time for the determination of the various issues of law and of fact, and appeals, reversals and other trials. And there might be issues of fact with regard to every precinct in the county.

Prior to the enactment of the statute relating to primary elections the question presented by this controversy would have been a political one, pure and simple; such questions are without the jurisdiction of the courts. It is unnecessary to cite the numerous decisions of the supreme court of the United States to the effect that the courts have no authority to inquire into or control political matters. It is equally true that the primary election law of 1902 (Acts of 1902, p. 105) left such questions where it found them, *i. e.,* to the machinery of the respective political parties, subject to the final determination of the people at the polls; regulated, however, to a certain limited extent as provided in that act. The Act of 1902, sec. 14, p. 110, in specifying that the county executive committees should have power to hear evidence, investigate and finally determine wrongs, did in so far as it went, but confirm a power which had resided in such committees from the organization of this government. It also narrowed the powers of the governing bodies of political parties, in so far as it undertook to provide *what* evidence should be received, as 'that the witnesses should be heard "orally under oath or by affidavits" and, to that extent, was in derogation of the powers previously exercised by such bodies. But because the Code of 1906 has omitted from the primary election law said sec. 14, and thereby repealed it, it is plausibly argued by appellant that the power of final determination in the premises has been taken away from the executive committees and thereby conferred upon the courts. Code 1906, § 3697, is, word for word, the same as sec. 1 of said Act of 1902, with the following words at the end of sec. 3697, not in said sec. 1 at all, to-wit: "Except as specially modified or otherwise provided in this chapter," relating solely

90 Miss.—56

to the indictment and punishment for offenses committed in holding primary elections. Code 1906, § 3705, is, word for word, the same as the Act of 1902, sec. 6 of said Acts of 1902. The statutory provision relative to canvassing the returns contained in said sec. 3705 is as follows: "The county executive committee shall meet on the first or second day after each primary election; shall receive and canvass the returns, which must be made within the time fixed by law for returns of general elections, and declare the result, announce the names of the nominees for county and county district offices, and the names of those candidates to be submitted to the second primary."

It is a familiar principle of law that upon the repeal of a statute superseding the common law rule previously applicable, the rule is revived. " Where an act superseding any particular common law rule previously applicable is repealed, that rule is held to be revived." Endlich on Interp. Stats., p. 678.

And so it seems by analogy, that the repeal of said section 14, which partly confirmed and partly restricted the powers previously exercised by the governing bodies of political parties, had the effect to restore such powers as they existed previous to the enactment of the repealed statute.

Since the recent decision of this court in *Ramey* v. *Woodward,* 44 South. Rep., 769, settling the question as to contests between rival candidates against the contention of appellant, we assume that the appellant now relies solely upon Code 1906, § 3231, relative to the alleged remedy by mandamus. So far as we have been able to ascertain, mandamus as a statutory remedy made its appearance in this state for the first time in Code 1871, § 1517, which was amended by the Act of 1876 (p. 56), so as to require the clerk to issue a summons and to dispense with the alternative writ and make the petition stand in lieu of such alternative writ. Section 2542 of the Code of 1880 and § 2846 of the Code of 1892 are word for word the same as said § 3231 of the Code of 1906, and it will be

observed that § 1517 of the Code of 1871 includes language which is identical with that of the three subsequent codes.

In none of the said statutes on mandamus is there any specific mention of primary elections nor of general elections.

Paraphrasing and combining the language of Justice CAMP-BELL in *Vicksburg* v. *Lowry,* 61 Miss., 102, and of Justice MAYES in *Ramey* v. *Woodward, supra,* and applying the same to the subject matter under consideration, we say that if the courts go so far as to undertake, by mandamus or otherwise, to determine for a particular party which candidate shall be declared its nominee, they would be taking into their hands powers which the people, by the action of their representatives, decided to intrust to the constituted authorities of the respective political parties, and which the people intended should be reviewable only by the votes of the electors at the polls.

*Ramey* v. *Woodward, supra,* establishes that the county executive committee is a *juasi*-judicial tribunal vested with large discretionary powers. The authorities in this state and elsewhere are uniform that such discretion cannot be controlled by mandamus. In *Brewer* v. *Abbay,* 82 Miss., 566, Chief Justice WHITFIELD says, "plainly this would be to employ the writ of mandamus not to compel action but to control discretion in acting." To the same effect is *Shotwell* v. *Covington,* 69 Miss., 735, where it was decided that judicial acts however "corrupt or arbitrary" may not be revised by mandamus.

If it should be said that the appellant is entitled to mandamus to *compel* the executive committee to act, the complete answer is that the petition shows that the committee had acted.

MAYES, J., delivered the opinion of the court.

In the case of *Ramey* v. *Woodward* (recently decided by this court), *Ante,* 777, 44 South., 769, it was held that there was no provision in the law for the courts to entertain contests between rival candidates in primary elections for the purpose of determining which shall be declared the nominee of the party.

Though the form of the proceeding instituted here is that of mandamus, its real purpose and effect, if sustained, is to procure the court to entertain a contest between rival candidates in a primary election for the office of sheriff, to determine which shall be declared the nominee of the party. We have heretofore held that the courts were without power under the law to entertain these contests in whatever form they may arise. This power is confided to the executive committee of the party, and there is no appeal from their decision save to the people themselves.

The essential featurs of this case are not different from the case of *Brewer* v. *Abbay,* in 82 Miss., 559, 35 South., 153. The petition here shows that the executive committee has acted and declared a person other than petitioner the nominee of the party, but it is alleged, as a ground for invoking the aid of the court, "that it did not receive, count, and canvass the returns from Love precinct, but, on the contrary, did receive, count, and canvass only spurious and pretended returns, not made or certified by the managers and clerks, but substituted and imposed upon the committee; that, on its attention being called to it, it declined to investigate or hear evidence of this fact, but proceeded unlawfully to change the result, really receiving a mere sham for returns; that this reception and canvass of the returns was a condition precedent of the declaration of the result and an announcement of the name of the nominee; that, notwithstanding that, they failed to receive and canvass the returns from Love precinct, but the said committee did add fifty-seven votes not shown by the return to the votes of E. D. Lauderdale, in the manner before described, thereby increasing the number counted for him to five more votes than they counted for said J. W. Barbee, whereupon they illegally and improperly declared E. D. Lauderdale nominee for said office of sheriff, and announced his name as the nominee of the party therefor." The ground upon which is based this petition, as shown by the petition itself, is not that the executive committee had refused to act; but the complaint is that they have acted and counted

illegal votes, and the purpose of this petition is to procure the court, by mandamus, to reassemble the committee for the purpose of a recount and an elimination from the count of the votes claimed to be fraudulent. The executive committee, the constituted authority of the party, is the sole arbiter of this question. If the facts alleged in this petition are true, deplorable as it is, the party must be allowed to correct these evils in so far as the party is concerned, and the criminal laws can be appealed to to punish the wrongdoers; but there is no power in the courts to correct it by means of its civil process, in so far as to command a reassembling of the committee for the purpose of having a recount of the votes. The very prayer of this petition is "that the court issue a writ of mandamus directing said Democratic executive committee to reassemble, and disregard and throw out the alleged false and spurious returns and ballots from Love precinct, and disregard same, and to canvass, count, and declare the result, independent of and without such false returns and ballots, and announce the name of the nominee in accordance with the returns and ballots, or, in the event that the true returns can be ascertained and the true ballots known, after throwing out the false and spurious returns and ballots to receive, count, and canvass the true returns from Love precinct, in said county, and declare the result, and announce the nominee in accordance therewith." It will thus be seen that this writ is appealed to for the purpose of procuring the court to have the executive committee reassemble, after having once assembled and declared the nominee, and throw out certain votes claimed to be illegal, and to again, after having acted once, declare another nominee for the party. The courts are without power to do this.

We do not decide whether the executive committee had the power to reassemble and make a new count, after having once canvassed the returns, declared the nominee, and adjourned, as it is not necessary to a decision of this case; but certain it is that, if they possess this power to reassemble, it is one of dis-

cretion vested in them, and is not subject to control by any court. The only distinction presented between the facts of this case and the *Brewer case* is that in this case the petition alleges that the petitioner did not know of the facts at the time, nor had he an opportunity of knowing. This might be a strong reason to be addressed to the executive committee as a reason why they should, in their discretion, reassemble and recount the votes; but there is no such differentiation in the facts of this case from the facts of the *Brewer* case as would vest the court with power to act. It is true, in the *Brewer case,* it is shown that the petitioner therein knew all the facts at the time of the meeting of the executive committee, and offered no objection or evidence before the committee to prove them; but the case does not turn upon the question of whether or not, knowing all the facts, he failed to object, and therefore was estopped from afterwards contesting them, but it holds that the petition, as is the case here, was for the purpose of having the executive committee reconvene and recount the votes, which the court held was beyond the power of the court. The court further says: "In the case of a primary election, there is no tribunal vested with the power to determine who is to be the party nominee, to correct the wrongs and frauds bearing upon the solution of that question, save only the executive committee of the county." We repeat here this excerpt from that opinion as being the law of this case.

*Affirmed.*

WHITFIELD, C. J., delivered the following specially concurring opinion:

I wish to add just one other view which, as it seems to me, greatly strengthens our conclusion as announced in the opinion in chief. That view is that the opposite construction practically nullifies the primary election law. If the courts have jurisdiction to hear a mandamus to compel the county executive committee to reconvene and recanvass the returns, in the case,

Concerning opinion.

not only of election cases, but of a simple primary nomination, then it must result that an appeal could lie to this court, and on reversal there could be another trial below, and a second appeal to this court, and so on. Only three weeks are allowed between the two primary elections, and when the other particulars, as to within what short time this canvass is to be made and the result declared by the executive committee, are considered, it must be perfectly obvious that the day for electing the officer will long have passed before there shall have been, on the opposite view, a mere declaration of who the nominee is. The scheme of the legislature in this matter seems to have been to repose confidence somewhere as to the honesty and purity of nominating primaries, and to repose that confidence in the executive committees of the counties, districts, and state. It was assumed that responsibility to the party would be enough to secure common honesty and common fairness on the part of the various election officers, and of the executive committees of the counties, districts, and state. A violation, on the part of any of these officers, of any of the provisions of the primary election law, subjects them to punishment as provided by that law; but there is no provision in the primary election law, since the repeal by the legislature of 1906, of sec. 14, ch. 66, p. 110, of the Laws 1902, for an appeal to the courts to correct any of the evils upon the nominating primaries.