BARNES *v.* McLEOD *et al.*

(Division B. April 11, 1932.)

[140 So. 740. No. 29800.]

438

T. J. Willis, of Hattiesburg, for appellant.

Stevens & Heidelberg, of Hattiesburg, and E. L. Dent, of Collins, for appellees.

Argued orally by **T. J. Wills**, for appellant, and by **R. W. Heidelberg**, for appellee.

**Anderson, J.**, delivered the opinion of the court.

Appellant filed his bill in the chancery court of Covington county against appellees, Mrs. Homer McLeod, Mrs. R. H. Watkins, and Mrs. T. W. Cranford, county election commissioners of that county to enjoin said election commissioners from placing on the official ballots to be used in the approaching general election of the county the name of W. J. Warren as the Democratic nominee for the office of sheriff of said county. A temporary injunction was issued without notice. Appellees answered and demurred to the bill, and the cause was heard on bill, answer, demurrer and motion to dissolve the temporary injunction, which motion was sustained by the court. From that decree appellant prosecutes this appeal.

The bill alleged, in substance, that appellant and W. J. Warren were both candidates for the Democratic nomination for the office of sheriff and tax collector of Covington county; that they received the highest number of votes in the first party primary election; that their names were placed upon the ballots to be voted for in the second primary; that after the second primary the Democratic Executive Committee of Covington county met and canvassed the returns and declared W. J. Warren to be Democratic nominee for the office; that thereafter and within twenty days appellant filed a contest of

the nomination of Warren, charging that his nomination had been secured by fraud in that Warren, who was the sheriff and tax collector at the time, had certified certain persons to be qualified electors of the county when in truth and in fact they were delinquent for their taxes; that the hearing of the contest was delayed from time to time until the 22d of September, 1931, when an order was entered by the Democratic Executive Committee sustaining the contest and declaring appellant to be the nominee instead of Warren; that the appellees, as election commissioners of the county, would meet in accordance with the provisions of the statute for the purpose of determining whose names should be placed upon the official ballot to be used in the general election to be held in November of that year, and (quoting from the bill) "that part of the duties of said election commissioners will be to determine the names of candidates for the respective offices of Covington county, and its political subdivisions, to be placed upon the ticket as the nominees of the several political parties, and the names of such candidates as may have been petitioned by the qualified electors in accordance with the provisions of said Chapter 157 of the Laws of 1930, to become candidates for any of the offices of the county or its subdivisions."

The bill further charged that appellees were threatening to put the name of W. J. Warren on the ticket as the Democratic nominee for sheriff and tax collector of the county, and sought to enjoin them from so doing, and alleged that there had been filed with the appellees a certificate of nomination of Warren, which certificate appeared to have been signed by some person acting as temporary chairman and not by the regular chairman of the Democratic Executive Committee of the county. On the filing of the bill, as stated, a temporary writ of injunction was issued enjoining appellees from placing the name of W. J. Warren on the ticket as Demo-

cratic nominee for the office of sheriff and tax collector of Covington county.

Appellees immediately filed an answer denying the material allegations of the bill, and alleging that, in addition to the certificate of nomination referred to in the bill of complaint, there had also been served upon them a certificate signed by the regular chairman of the Democratic Executive Committee of the county certifying that appellant's contest had been rejected by the Democratic Executive Committee, and that Warren had been declared the nominee. To this certificate was attached what purported to be a copy of an order passed by the Democratic Executive Committee of the county signed by eight members thereof and also by the regular chairman, making nine in all, constituting more than a majority of the committee. It was alleged in the answer that it was the purpose and intention of the appellees as election commissioners to meet at the time and place required by law, and then as a judicial or quasi-judicial body to hear all the evidence and determine the question as to whose name should be placed upon the ticket as the Democratic nominee for the office of sheriff and tax collector of the county. With the answer, and as a part of it and separately set out, was a demurrer questioning the jurisdiction of a court of equity to entertain the bill.

A motion to dissolve the injunction on bill, demurrer, answer, and exhibits thereto was made, and notice served on appellant. On the hearing the chancellor held that the chancery court was without jurisdiction and dissolved the injunction. From that decree appellant was granted an appeal by the chancellor without supersedeas. Thereupon appellant made application for a writ of supersedeas to a member of this court who granted the writ, stating at the time that he considered the matter of sufficient importance to be passed upon by the court, and that the only way he knew of to get the matter judicially determined before the election was to grant the super-

sedeas and permit an immediate motion to discharge the same to be entered and heard. Accordingly a motion was made before this court to discharge the supersedeas, which was overruled, and now the cause is here on appeal from the judgment of the lower court sustaining the demurrer and dissolving the injunction.

In considering whether courts of equity have jurisdiction in cases of this character, we think it would be well to review the decisions of our court bearing on the question, and in doing so we shall follow rather closely appellees' brief which contains a fair and accurate analysis of the decisions. In considering this question it should be borne in mind that under our system of jurisprudence the chancery courts have only such jurisdiction as was conferred by the Constitution, all other jurisdiction both civil and criminal not vested by the Constitution in some other court is vested in the circuit courts. Sections 156, 159, 160, and 161 of the Constitution.

The first case having to do with the question was Ex parte Wimberly, 57 Miss. 437. In that case there was involved an election contest which arose many years before we had any statutes in this state legalizing party conventions and primary elections for the nominations of candidates for public office. The law in that time provided that any person desiring to contest an election could within a limited time file his contest before a justice of the peace of the county, who, upon notice to the other party, should summon a jury to try the contest. An appeal was provided from the decision of the jury to the circuit court. In Yalobusha county, Brannon and Wimberly were candidates for the office of chancery clerk. After the election the proper officers of the county adjudged that Brannon had been elected. Thereupon Wimberly followed the statutory proceeding and filed a contest of his election. Brannon filed a bill in the chancery court alleging that the justice of the peace before whom the contest was pending was a warm political

friend of Wimberly and a bitter political enemy of complainant, and that the constable who summoned the jury was a brother of Wimberly. The chancellor issued an injunction restraining Wimberly from prosecuting the contest. In violation of the injunction the contest before the justice of the peace was proceeded with and resulted in a verdict and judgment for Wimberly, the contestor. Thereupon Wimberly was cited for contempt for violating the injunction and was adjudged in contempt by the chancery court and fined in the sum of one thousand dollars and sentenced to six months' imprisonment. He thereupon sued out a writ of habeas corpus, which habeas corpus proceeding reached the Supreme Court. The Supreme Court held that the jurisdiction of the special tribunal created by the statute for the determination of an election contest was exclusive, and that the chancery court was without jurisdiction to entertain any suit involving the contest of a political election; that the injunction issued in the case was null and void, and that Wimberly was right in ignoring the injunction, and was entitled to his freedom by writ of habeas corpus. In deciding that case the court held that such a contest partook as much of public as of private right and belonged rather to the political than to the judicial department of the government, and that, in so far as it involved the property rights of the contestants to the powers and emoluments of the office, they presented purely legal issues determinable in a court of law. In the opinion the court used this language: "We are not aware that, even in states where there exist no statutory provisions for the speedy settlement of such contests, they have ever been held to fall within the jurisdiction of courts of equity, and certainly it is well settled that when statutory regulations on the subject have been adopted, the means provided by the statute are exclusive of all others."

Gibbs v. McIntosh, 78 Miss. 648, 29 So. 465, 466, originated in this manner. A petition was filed with the board of supervisors seeking a local liquor option election. A counter petition was also filed, whereupon the board ordered the election. An appeal was taken from this order to the circuit court. The commissioners appointed to hold the election disregarded the appeal and were proceeding to hold the election when a petition for a writ of supersedeas was presented to the chancellor, who issued an order granting the writ and enjoining the holding of the election until the appeal could be heard. The court held that the order of the chancellor granting the supersedeas was without authority of law; that it was not the policy of this state to have elections and other political matters of government reserved to legislative discretion interfered with by the judges and officers of the judicial department of government, and that the supersedeas granted by the chancellor had operated to defeat the election ordered by the board of supervisors, because the provisions of law as to the time of holding the election could not be complied with, there being no power in the court to set a different time than that set by the board of supervisors. This language was used in the opinion: "Learned counsel have cited us to State v. Commissioners of Sherman County, 39 Kan. 293, 18 P. 179, where the power of the courts (in that state) to restrain the holding of elections, and of fixing a new time for the holding of them when improperly delayed, is maintained; but the inclination of judicial thought in this state is that elections of all sorts are not to be interfered with by the courts. Ex parte Wimberly, 57 Miss. 437; Ferguson v. Monroe Co., 71 Miss. 524, 14 So. 81." It is true in that case the court did not pass on the question of the jurisdiction of a court of equity, nevertheless it did point out the policy of the state in reference to courts interfering with political matters.

Conner v. Gray, 88 Miss. 489, 41 So. 186, 188, 9 Ann. Cas. 120, involved the jurisdiction of the chancery court to enjoin the holding of an election which was being held in violation of the Constitution and laws of the state. The court reaffirmed the doctrine announced in Gibbs v. McIntosh, supra, but went further and said that resort could be had to a court of equity in a case where the Legislature had no power to authorize the holding of the election under the Constitution, or, where having the power, they had exercised it in a way in plain violation of the Constitution, "but in both instances it must appear from the act itself that it is unconstitutional." However, the dictum of the court in that case, stating that a court of equity would have jurisdiction where the act under which the election sought to be enojoined was unconstitutional, was expressly overruled in Power, Secretary of State, v. Ratliff, 112 Miss. 88, 72 So. 864, 866, Ann. Cas. 1918E, 1146. The latter case was a combination of two cases wherein bills of injunction had been filed in the chancery court seeking to enjoin Power, secretary of state, from acting upon petitions filed by certain electors of the state seeking to have approved by vote of the people certain acts of the Legislature, the petition being filed under an attempted amendment of the Constitution providing for the initiative and referendum. A temporary injunction was issued. A motion was made to dissolve the temporary injunction, and the chancellor declined to dissolve it. The question of jurisdiction was not raised on the appeal to the Supreme Court, but the court of itself on its own motion raised it, and said, in reference to the case of Conner v. Gray, supra: "There are some general expressions in this opinion sustaining the jurisdiction of chancery to enjoin an election called in violation of the Constitution and laws of the state, and these general expressions of the court support the argument of counsel for the complainants in the instant cases. We have examined the issues and the opinion of

the court in this case of Conner v. Gray, and with the highest regard for the learning and ability of the judge delivering the opinion of the court in that case, we are forced to the conclusion that the statements of the court in that case upon the jurisdiction of equity are too general and far-reaching." The court said further: "A safe rule was announced by Judge Terral in Gibbs v. McIntosh, 78 Miss. 648, 29 So. 465, that: 'It is not the policy of this state to have elections, and other political matters of government reserved to legislative discretion interfered with by the judges and officers of the judicial department of the government."

In the Power v. Ratliff Case, the court quoted with approval the language of the Supreme Court of Oklahoma in City Council of McAlester v. Milwee, 31 Okla. 620, 122 P. 173, 40 L. R. A. (N. S.) 576, to the effect that courts of equity are only conversant with rights of property and the maintenance of civil rights and will not interfere to enforce or protect purely political rights.

In Power, Secretary of State, v. Robertson, 130 Miss. 188, 93 So. 769, the court again reaffirmed the doctrine that a court of equity has no jurisdiction to interfere with or control the holding of an election.

In Town of Sumner v. Henderson, 116 Miss. 64, 76 So. 829, a bill for injunction was filed in the chancery court seeking to enjoin the defendants from acting as aldermen and members of the board of school trustees. The Supreme Court held that the chancery court was without jurisdiction and quoted from Pomeroy's Equity Jurisprudence as follows: "It is a principle of universal application that an injunction will not issue when its object is to try title to public office."

In Native Lumber Co. v. Board of Supervisors, 89 Miss. 171, 42 So. 665, there was involved an election held in Harrison county to determine whether or not the county should be divided into two judicial districts. The election commissioners met after the election and declared

the result of the election and certified the same to the board of supervisors in the manner required by statute. A bill for injunction was filed in which it was claimed that gross fraud had been practiced in the election, that false returns were made to the election commissioners, and that the election commissioners themselves were guilty of fraud, that they had refused to count ballots which should have been counted, and fraudulently manipulated the returns of the election so as to show a false majority of one vote in favor of a division of the county. The bill sought to enjoin the board of trustees from entering an order declaring the election carried in favor of the division of the county, and sought a mandatory injunction against the election commissioners requiring them to immediately file with the chancery court the ballot boxes, tally sheets, and tickets composing the returns of the election, and asked that the truth of the allegations against the election commissioners be inquired into by the chancery court, and that upon a final hearing an order be entered declaring the election carried against a division of the county, and enjoining the board of supervisors from performing or doing any act toward carrying out the division of the county. The court held that for obvious reasons it was manifest that the chancery court had no jurisdiction to entertain such bill, that the counting of the votes, the canvassing of the returns, and the declaration of the result of the election were by the political department of the government—the legislative—expressly committed to the election commissioners and the board of supervisors, and that there were many good reasons of a political nature why the Legislature, in the exercise of its plenary power, should commit those matters to a special tribunal for determination, and that such cases were political in their nature. The court, in its opinion, reaffirmed the doctrine announced in Conner v. Gray, supra, and Gibbs v. McIntosh, supra.

In State ex rel. Brewer v. Abbay, 82 Miss. 559, 35 So. 153, 155, the court used this language: "In the case of a primary election there is no tribunal vested with power to determine who is to be the party nominee—to correct the wrongs and frauds bearing upon the solution of that question—save only the executive committee of a county." In State ex rel. Barbee v. Brown, 90 Miss. 876, 44 So. 769, 771, that language was quoted with approval, and Judge Whitfield in a specially concurring opinion said further: "There is no provision in the primary election law, since the repeal by the Legislature of 1906, of section 14, c. 66, p. 110, of the Laws of 1902, for an appeal to the courts to correct any of the evils upon the nominating primary."

In Ramey v. Woodward, 90 Miss. 777, 44 So. 769, the court held that, in the absence of statutory grant of jurisdiction in such cases, the courts will not hear and determine contested political party primary election cases, although such elections are provided for and sought to be regulated by law. The rule is thus stated in 14 R. C. L. page 374, section 76: "It is a general rule that a court of equity has no jurisdiction in matters of a political nature, and that no injunction to protect a person in the enjoyment of a political right or to assist him in acquiring such a right will be granted. No such jurisdiction has ever been conceded to a chancery court either by the English or American judiciary."

In Howard v. Sheldon, 151 Miss. 284, 117 So. 839, the court held that a court of equity could not enjoin the holding of conventions and elections, at which delegates to county conventions were to be elected, on the ground that the state executive committee violated the primary election statutes in calling such conventions and elections, since the court could not interfere with or regulate the holding of primary elections or conventions by political parties. The decision part of the opinion in that case is in this language: "No jurisdiction has been ex-

pressly conferred by any statute upon the courts of this state to interfere with, or regulate the holding of primary elections and conventions by political parties, and, in Ramey v. Woodward, 90 Miss. 777, 44 So. 769, and State v. Brown et al., 90 Miss. 876, 44 So. 769, this court held that the courts should not assume such jurisdiction. The reason therefor, as was clearly pointed out by Judge Whitfield, in his concurring opinion in State v. Brown, supra, is that the time which must necessarily be consumed by the courts in attempting to settle controversies relative to the holding of primary elections and conventions is such as would destroy, in most cases, the very purpose which the Legislature sought to accomplish by the enactment of the primary elections law. The time intervening between the calling and holding of primary elections or conventions is always necessarily short, and would, in most instances, elapse, as it has in the case at bar, before the courts could decide a controversy relative thereto. Such would always be the case should successive appeals to this court be taken.''

Appellant cites several cases from Montana, one from Wisconsin, one from Texas, and one from Kentucky, to sustain the jurisdiction of a court of equity in cases of this character. The Texas case, Gilmore v. Waples, 108 Tex. 167, 188 S. W. 1037, supports the contention in a well-reasoned opinion. However, in all of those states the law and equity systems are blended and administered together in the same court. That fact may have influenced those courts to sustain the jurisdiction of equity. Regardless, however, of what the courts have held elsewhere, it appears that our court by a long line of decisions is wedded to the doctrine that a court of equity is without jurisdiction in cases of this character.

The contention that the writ of prohibition was the proper remedy in this case, and that the chancery court ought to have transferred the cause to the circuit court in order that the latter court might convert it into a

proceeding for a writ of prohibition, is without merit. Section 162 of the Constitution provides: "All causes that may be brought in the chancery court whereof the circuit court has exclusive jurisdiction shall be transferred to the circuit court." In this cause injunctive relief is the sole relief sought. The principal office of the writ of prohibition is to prevent an inferior court or other tribunal from assuming jurisdiction with which it is not legally vested. 22 R. C. L., page 4, section 3. Section 162 of the Constitution has no application to causes in the chancery court where injunctive relief alone is sought. The circuit courts have no jurisdiction to try such causes. If the cause had been transferred by the chancery court to the circuit court and by the latter court converted into a proceeding for a writ of prohibition, under the law the relief sought could not have been granted by the circuit court under that writ.

Affirmed.