375 So.2d 991 (1979)
Hiram GOODMAN et al.
v.
Irl Dean RHODES.
No. 51772.
Supreme Court of Mississippi.
September 26, 1979.
Rehearing Denied October 31, 1979.
*992 James G. McIntyre, Jackson, for appellants.
McLaurin & McLaurin, John C. McLaurin, Brandon, for appellee.
Before PATTERSON, SUGG and WALKER, JJ.
SUGG, Justice, for the Court:
Irl Dean Rhodes filed a bill of complaint in the Chancery Court of Rankin County on June 12, 1979, against the members of the Rankin County Democratic Executive Committee. He alleged that he was qualified to become a candidate for the office of the chancery clerk of Rankin County in accordance with the laws of this state, and had executed and filed the affidavit, and had paid the qualifying fee all within the time required by statute. He further alleged that, on June 11, 1979, the Committee willfully and without authority of law withheld his name as a duly qualified candidate from certification so that his name would not appear on the ballot as a candidate in the first Democratic primary to be held on August 7, 1979. Rhodes prayed for a mandatory injunction requiring the Committee to certify him as a candidate for the office of the chancery clerk in the Democratic primary and for a temporary mandatory injunction without notice. A fiat directing issuance of a writ for a temporary injunction without notice to the Committee was signed by the chancellor on June 12, 1979.
On June 20, 1979, Hiram Goodman, Chairman of the Committee, and two other members of the Committee, filed a demurrer and motion to dismiss based on the grounds that the chancery court was without jurisdiction and complainant had an adequate remedy at law. Rhodes filed an amended bill of complaint on June 29, 1979, and on July 2, 1979, the chancellor overruled the demurrer and permitted an interlocutory appeal to settle the controlling principles of the case.
The first question is whether the chancery court had jurisdiction of the subject matter of the bill of complaint. In Barnes v. McLeod, 165 Miss. 437, 140 So. 740 (1932), this Court concluded that the chancery court had no jurisdiction in election cases after reviewing in detail the case law of this state pertaining to the question. Also, we have held that chancery courts do not have jurisdiction of suits involving political rights. Brumfield v. Brock, 169 Miss. 784, 142 So. 745 (1932).
Following the well established principles established by these cases, we hold the chancellor did not have jurisdiction of the subject matter and should not have issued the temporary injunction. When a bill for an injunction is presented to a chancellor, he should first examine it to see whether the chancery court has jurisdiction of the subject matter. If the chancery court does not have jurisdiction of the subject matter, he should dismiss the bill and refuse to grant the injunction. Jurisdiction of the subject matter cannot be conferred either by will of one of the parties or by the consent of all of them. This principle is firmly established in our jurisprudence as shown by the case of Brown v. Bank, 31 Miss. 454, 459-460 (1856), where this Court stated:
Upon the second point, the rule is equally well settled. The objection here goes to the jurisdiction. In a class of cases where a court of equity has jurisdiction, and is competent to give relief, a court of law also having jurisdiction; or where the jurisdiction has reference to the person, and the defendant appears and defends, without objection to the jurisdiction, by demurrer or answer, he will be taken to have waived it, and it cannot be insisted on at the hearing. The cases cited from 4 Cow. 727, and 3 Gill & Johns. 504, are of this class.
But it is held by all the authorities, that, if the bill shows a case not within the appropriate jurisdiction of a court of equity, the error is fatal in every stage of the cause, and cannot be cured by any waiver or course of proceeding by the *993 parties. Story, Eq.Pl. § 10; Barrett v. Oliver, 7 Gill & Johns. 207; 3 Dessaus. 6; 2 Hill, (N.Y.) 159. For if consent cannot confer jurisdiction of the subject-matter, a mere negative act of waiver cannot have that effect. And whenever the court discovers that it has not jurisdiction to grant relief upon the case as made by the pleadings, it is its duty to dismiss the bill.
The chancery court cannot proceed with a case where it has no jurisdiction of the subject matter. If the rule were otherwise, jurisdictional lines would be obliterated by the will of the parties so that the consent of the litigants would control the jurisdictional lines of separation between chancery and circuit courts. This is not permitted.
Rhodes' remedy was not by injunction in the chancery court but by the procedure outlined in Hinds County Democratic Executive Committee v. Muirhead, 259 So.2d 692 (Miss. 1972). In that case the Hinds County Democratic Executive Committee refused to place Mrs. Muirhead's name on the ticket as a candidate in the Democratic primary election. Mrs. Muirhead obtained a writ of mandamus directing the Hinds County Election Commission to certify her as a candidate. We reversed and rendered, holding that Mrs. Muirhead was afforded due process of law, "... by the right to a hearing before the committee, by mandamus if necessary, and the right to appeal fortified by advancement on the appellate docket due to public interest." (259 So.2d at 695).
According to the allegations of the bill of complaint, Rhodes was qualified as a candidate for the office of chancery clerk. The demurrer admitted this and the Committee has not assigned any reason for failing to certify Rhodes as a candidate for the office. Accordingly, from the record, we are constrained to hold that the committee wrongfully withheld certification of Rhodes as a candidate. This is a case where the chancellor and the Committee both erred; the chancellor, by issuing the injunction, and the Committee, by refusing to certify Rhodes as a candidate.
The injunction issued by the chancellor was absolutely void so the Committee could have disregarded the injunction and refused to certify Rhodes as a candidate. We recognize that the Committee would be reluctant to disregard the injunction because they would then be subject to contempt proceedings if the injunction was not void. Injunctions must be obeyed, unless void, but the party against whom the injunction is issued is not the judge of whether the injunction is void.
If the Committee did not choose to disregard the injunction, it could have refused to certify that Rhodes received a majority of the votes without the risk of violating the injunction. This was done by the election commissioners in Warren v. Smith, ex rel. Barnes, 163 Miss. 817, 141 So. 901 (1932). Warren is a sequel to Barnes v. McLeod, supra. In Barnes, after a temporary injunction was issued enjoining the election commissioners from placing Warren's name on the ballot as the nominee of the Democratic party, the commissioners adopted an order that the name of Warren, and no other, was to be printed on the official ballots as the candidate for the office of sheriff in the event the injunction should be disposed of in time for this to be done. The injunction was not disposed of by the time the ballots were printed and the election held. Although the injunction was dissolved by the chancellor, the case was appealed with supersedeas, and was not disposed of until the decision in Barnes v. McLeod on April 11, 1932 when this Court affirmed the decree dissolving the injunction.
The election commissioners met on November 4, 1931 to declare the result of the election. Six hundred forty seven votes were cast for Barnes whose name appeared on the ballot and four hundred sixty six votes were cast for Warren as a write-in candidate. The commissioners declared that the name of Barnes had been wrongfully placed on the ballots and Warren should be and was declared to be elected to the office of sheriff and tax collector because *994 he received the greatest number of legal votes for the office.
In this case, the Commissioners could have followed the same procedure as the election commissioners in Warren v. Barnes, supra, and refused to certify Rhodes as the nominee of the Democratic party. Failing to do this they have ratified the appearance of Rhodes' name on the ballot.
We have obtained from the Circuit Clerk of Rankin County a certified copy of the certificate executed by Hiram Goodman, chairman of the Committee, of the votes cast for nomination for the several offices at the Democratic primary election held in Rankin County on August 7, 1979. The results as certified show that Rhodes received a majority of the votes for the office of chancery clerk. Rhodes received 8,791 votes and his two opponents received a combined total of 7,086 votes. The Committee, having certified the results of the primary election showing Rhodes to be the nominee of the party, has by that action ratified the appearance of Rhodes' name on the ballot.
To summarize:
Chancery courts have no jurisdiction to determine the candidates whose names should appear or not appear on a ballot.
Executive committees of political parties may not arbitrarily refuse certification of a candidate where the candidate has complied with the law for qualifying.
The voters of Rankin County have spoken by their ballots and chose Rhodes as the Democratic nominee for the office of chancery clerk.
The Committee ratified the appearance of Rhodes' name on the ballot and the expression of the voters by certifying the results of the primary.
For the reasons stated, we reverse, dissolve the temporary injunction, and dismiss the bill of complaint.
REVERSED AND RENDERED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.